Gregory S. Walston, State Bar No. 196776
Orestes Alexander Cross
WALSTON CROSS
222 Columbus Avenue, Suite 420
San Francisco, California 94133
Telephone: (415) 956-9200
Facsimile: (415) 956-9205
Email: gwalston@walstonlaw.com

ATTORNEYS FOR PLAINTIFF
MARKHAM ROBINSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARKHAM ROBINSON,

　　　　　　Plaintiff

　　v.

SECRETARY OF STATE DEBRA
BOWEN, et al.

　　　　　　Defendants.

Case No. 08-CV-3836 WHA

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO
DISMISS**

**Date: September 11, 2008
Time: 7:30 a.m.
Courtroom: 9**

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

# TABLE OF CONTENTS

INTRODUCTION ..................................................................... 1

STATEMENT OF FACTS .......................................................... 2

STANDARD ........................................................................... 2

STATEMENT OF THE ISSUES .................................................... 3

ARGUMENT .......................................................................... 4

I.   Plaintiff Has Standing ...................................................... 4

    A.  Plaintiff's Status as a Designated Presidential Elector of the
        AIP Meets Basic Standing Requirements........................... 5

    B.  There is No Merit to the Republican's Argument that Plaintiff
        Lacks Standing To Challenge the Election Because, As An
        Electoral Candidate, His Name Is Not on the Ballot............ 7

    C.  Plaintiff Need Not Demonstrate The AIP Will Win the November
        Election to Establish Standing....................................... 8

    D.  Plaintiff Has Standing Against the Republican Electors........... 8

    E.  To the Extent Plaintiff Lacks Standing as an Individual AIP
        Presidential Elector, the Court Should Allow Plaintiff to
        Amend the Complaint to Add the AIP as a Plaintiff............ 9

II.  Plaintiff's Claims Are Justiceable.......................................9

III. Plaintiff's Claims Against the Secretary Are Cognizable............ 11

    A.  Federal Courts Have Jurisdiction to Enjoin State Officials from
        Violating the Constitution.......................................... 11

    B.  The State Does Not Have Plenary Power to Violate the Constitution........12

    C.  An Injunction Prohibiting an Ineligible Candidate from Running
        for President Does Not Violate the First Amendment........................ 13

    D.  Plaintiff's Claims Are Not Barred By The Twelfth Amendment............. 17

IV. The Republicans Have Failed to Raise Any Argument that Plaintiff's
    Declaratory Claims Should Be Dismissed................................... 19

CONCLUSION.......................................................................21

i

1

## **TABLE OF AUTHORITIES**

2

<u>CASES</u>

3

4

*American Fed'n of Labor v. Swing*
    312 U.S. 321 (1941)..................................................................15, n. 2.

5

*Anderson v. Celebrezze*
    460 U.S. 780 (1983) ....................................................................14, 15

6

7

*Brown v. Hartlage*
    456 U.S. 45 (1982)...................................................................16

8

*Baker v. Carr*
    369 U.S. 186 (1962) .................................................................*passim*

9

*Bullock v. Carter*
    405 U.S. 134 (1972) ....................................................................16

10

11

*Burdick* v. *Takushi*
    504 U.S. 428 (1992) ....................................................................15

12

*Bush v. Gore*
    531 U.S. 98 (2000) ........................................................ 2, 12-13, 21

13

14

*Citizens for Legislative Choice v. Miller*
    993 F. Supp. 1041 (E.D. Mich. 1998) .......................................6

15

*Conley v. Gibson*
    355 U.S. 41 (1957) .................................................................. 2-3

16

17

*Erum v. Cayetano*
    881 F.2d 689 (9th Cir. 1989) ..................................... 2, 4, 5, 7, 21

18

*Fulani v. League of Women Voters Educ. Fund*
    882 F.2d 621, 626 (2d Cir. 1989) .............................................. 8

19

20

*Gertz v. Robert Welch, Inc.*
    418 U.S. 323 (1974) ....................................................................16

21

*Henderson v. Ft. Worth Independent School District*
    526 F.2d 286 (5th Cir. 1976) .................................................. 5

22

23

*Hubbard v. EPA*
    949 F.2d 453 (D.C. Cir. 1991) ................................................. 12

24

*Imperial v. Castruita*
    418 F. Supp. 2d 1174 (C.D. Cal. 2006) ..................................... 5

25

26

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) .............................................................4, 5, 6-8, 20

27

*Mancuso v. Taft*
    476 F.2d 187 (1ˢᵗ Cir. 1973) ................................................. 14

28

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

*Marbury v. Madison*
   5 U.S. 137 (1803) ....................................................................18

*McPherson v. Blacker*
   146 U.S. 1 (1892) ................................................................... 12

*MedImmune, Inc. v. Genentech, Inc.*
   549 U.S. 118 (2007) ............................................................... 19

*Miyazawa v. City of Cincinnati*
   45 F.3d 126 (6th Cir. 1995) ...................................... 4-7, 20-21

*No GWEN Alliance of Lane County, Inc. v. Aldridge*
   841 F.2d 946 (9th Cir. 1988) ...................................... 5, 8, 20-21

*Oneida Indian Nation of N.Y. v. County of Oneida*
   414 U.S. 661, 666 (1974)............................................................3

*Patriot Party v. Allegheny County Dep't of Elections*
   95 F.3d 253 (3d Cir. 1996) ...................................................... 8

*Rogers v. Corbett*
   468 F.3d 188 (3d Cir. 2006) ................................................... 16

*San Francisco County Democratic Cent. Committee v. March Fong Eu*
   826 F.2d 814....................................................................... 14, 15

*San Francisco County Democratic Cent. Comm. v. March Fong Eu*
   792 F.2d 802 (9th Cir. 1986) .................................................. 16

*Shelley v. Kraemer*
   334 U.S. 1 (1948) .......................................................... 15, n. 2

*Steel Co. v. Citizens for a Better Env't*
   523 U.S. 83 (1998) ...................................................................3

*Storer* v. *Brown*
   415 U.S. 724 (1974) ............................................................... 15

*Timmons v. Twin Cities Area New Party*
   520 U.S. 351 (1997) ............................................................... 14

*Ex parte Young*
   209 U.S. 123 (1908) ............................................................... 11

*Warth v Seldin*
   422 U.S. 490 (1975) .................................................................5

## CONSTITUTIONAL PROVISIONS

U.S. CONST., art. II, § 1, cl. ...............................................2, 12

U.S. CONST., AMEND. XII .......................................... 10-11, 17

*Robinson v. Secretary of State, et al.*

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

## FEDERAL RULES

Fed. R. Civ. P 12(b)(1) ………………………………………….. 2-3

Fed. R. Civ. P. 12(b)(6) …………………………………………….. 2-3

Fed. R. Civ. P. 15………………………………………………………9

## OTHER AUTHORITY

5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER,
FEDERAL PRACTICE AND PROCEDURE § 1350, p. 106 (3d ed. 2004)…. 3

*Black's Law Dictionary* (7th ed. 1999)……………………………………… 12

Luis Fuentes-Rohwer and Guy Uriel Charles, *The Electoral
College, the Right to Vote and Our Federalism: A Comment
on a Lasting Institution*, 29 FLA. ST. L. REV. 879, 896 (2000)………………... 18

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Robinson v. Secretary of State, et al.*

Gregory S. Walston, State Bar No. 196776
Orestes Alexander Cross
WALSTON CROSS
222 Columbus Avenue, Suite 420
San Francisco, California 94133
Telephone: (415) 956-9200
Facsimile: (415) 956-9205
Email: gwalston@walstonlaw.com

ATTORNEYS FOR PLAINTIFF
MARKHAM ROBINSON

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MARKHAM ROBINSON,<br><br>                    Plaintiff<br><br>          v.<br><br>SECRETARY OF STATE DEBRA<br>BOWEN, et al.<br><br>                    Defendants. | Case No. 08-CV-3836 WHA<br><br>**PLAINTIFF'S OPPOSITION TO<br>DEFENDANTS' MOTION TO<br>DISMISS**<br><br>**Date: September 11, 2008<br>Time: 7:30 a.m.<br>Courtroom: 9** |

### INTRODUCTION

This action, brought by a presidential elector designated by a recognized political party,

asserts that Senator McCain is ineligible for the Presidency. The Republicans and Senator

McCain move to dismiss this court under Rules 12(b)(1) and 12(b)(6) on the following grounds:

1. Electoral candidates, such as plaintiff, do not have standing to challenge Senator

     McCain because they are not directly competing with McCain himself;

2. The electoral candidates of minor political parties, such as plaintiff's American

     Independent Party, lack standing because their party will never win anyway;

3. Disputes concerning Article II's eligibility requirements are not justiceable because

     the Constitutional provision that Electors are to vote for the President, and

     Congress is to break any stalemate, implicitly means that Courts cannot address

     Article II disputes;

*Robinson v. Secretary of State, et al.*

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94133
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

4.      Disputes concerning any state presidential election matter are not subject to federal

jurisdiction at all; and

5.      Even if Senator McCain is constitutionally ineligible to run for and serve as

President, a court order recognizing as much violates McCain's First Amendment

right to run for office.

These positions, if correct, would preclude anyone from raising Article II eligibility

disputes, thereby rendering Article II meaningless.  Plaintiff respectfully submits that is not the

case.  Plaintiff has standing under black-letter law because he has "a personal stake in the outcome

of the election."  *Miyazawa v. City of Cincinnati*, 45 F.3d 126, 128 (6th Cir. 1995); *see also*, *Erum*

*v. Cayetano*, 881 F.2d 689 (9th Cir. 1989).  The question of McCain's "natural born" citizenship

under Article II is plainly justiceable because there is no "textually demonstrable constitutional

commitment of the issue to a coordinate political department."  *Baker v. Carr,* 369 U.S. 186, 217

(1962).  And the notion that there is no federal jurisdiction over state presidential election matters

defies Supreme Court case law.  *Bush v. Gore*, 531 U.S. 98 (2000).  The Republicans have failed

to articulate any valid argument why these issues should not be addressed on their merits, and their

motion should be denied.

### STATEMENT OF FACTS

The American Independent Party (AIP) and Republican Party are both qualified political

parties recognized by the California Secretary of State.  Both will appear on the November 2008

California presidential election ballot.  Plaintiff is one of the fifty-five California presidential

electors designated by the AIP.  Senator McCain is the Republican's presumptive nominee for

President, and will be the formal nominee by the time this matter is heard.  Senator McCain was

born in Panama, which, plaintiff contends, renders him ineligible for the presidency under Article

II's "natural-born" citizen clause.

### STANDARD

A motion to dismiss under Rule 12(b)(6) should be granted only when the movant

demonstrates "beyond a doubt that the plaintiff can prove no set of facts in support of his claim

*Robinson v. Secretary of State, et al.*

that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); Fed. R. Civ. P. 12(b)(6).

A motion to dismiss under Rule 12(b)(1) "should not be confused with a motion to dismiss under Rule 12(b)(6); the former determines whether the plaintiff has a right to be in the particular court and the latter is an adjudication as to whether a cognizable legal claim has been stated." 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350, p. 106 (3d ed. 2004). Jurisdiction is lacking only when the federal claim is "insubstantial, implausible, foreclosed by prior decisions of th[e] [Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89 (1998) (citing *Oneida Indian Nation of N.Y. v. County of Oneida,* 414 U.S. 661, 666 (1974)).

## STATEMENT OF THE ISSUES

1.    The Republicans assert plaintiff lacks standing.  A plaintiff must have a "personal stake in the outcome of an election" to have standing to challenge it in Court.  Here, plaintiff is a presidential elector designated by a rival political party on the ballot, and plaintiff's electoral vote is at stake in this election.  Does plaintiff have a "personal stake in the outcome" of the election?

2.    The Republicans assert disputes under Article II's citizenship clause are non-justiceable political questions because the Twelfth Amendment establishes that Electors vote for President, and Congress breaks any stalemate.  Non-justiceable questions lie when there is "a textually demonstrable constitutional commitment of the issue to a coordinate political department."  Here, the Twelfth Amendment does not address who is to resolve disputes under Article II's citizenship clause.  Is the issue of McCain's eligibility "textually committed to a coordinate political department?"

3.    The Republicans assert this Court lacks jurisdiction to enjoin the Secretary of State from placing Senator McCain's name on the California ballot.  Under black-letter law, a federal court may enjoin a state official from committing an unconstitutional act.  Here, placing Senator McCain's name on the ballot as a presidential candidate violates Article II's natural born

*Robinson v. Secretary of State, et al.*

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

1    citizenship requirement because that clause prohibits McCain's candidacy.  Does the Court have

2    jurisdiction to require the Secretary to comply with the U.S. Constitution?

3        4.    The Republicans assert the State has plenary power to appoint Electors, which

4    deprives this Court of jurisdiction over plaintiff's claims that the State's presidential ballot will

5    violate Article II eligibility requirements.  However, states do not have plenary power to violate

6    the Constitution, and Courts have jurisdiction to resolve constitutional challenges to state

7    elections.  Does California's plenary power to appoint presidential electors deprive this Court of

8    jurisdiction to determine whether the State ballot violates Article II?

9        5.    The Republicans assert that enjoining Senator McCain's presidential campaign

10    violates the First Amendment.  However, unanimous case law holds that a candidate's First

11    Amendment interests in running for office must yield to valid eligibility requirements, and Senator

12    McCain is constitutionally ineligible for the presidency under Article II.  Does enjoining

13    McCain's presidential campaign violate McCain's First Amendment rights?

14                            **ARGUMENT**

15                                **I.**

16                        **PLAINTIFF HAS STANDING.**

17        Defendants move to dismiss on grounds that plaintiff's status as a designated AIP elector

18    does not establish a personal stake in the outcome of the election.

19        As a designated member of the AIP's California Electoral College, plaintiff has a personal

20    stake in the outcome of the upcoming November election.  Specifically, plaintiff's electoral vote is

21    at stake in this Election.  The AIP will be on the general-election ballot in California, and if the

22    AIP wins the election, plaintiff will cast one of California's fifty-five electoral votes.  This

23    circumstance gives plaintiff "a personal stake in the outcome of the election" sufficient to establish

24    his standing to challenge the election. *Miyazawa v. City of Cincinnati*, 45 F.3d 126, 128 (6th Cir.

25    1995); *see also*, *Erum v. Cayetano*, 881 F.2d 689 (9th Cir. 1989).

26    / / /

27    / / /

28    / / /

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

- 4 -

*Robinson v. Secretary of State, et al.*

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94133
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

A.    **Plaintiff's Status as a Designated AIP Presidential Elector Meets Basic Standing Requirements.**

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[T]he irreducible constitutional minimum of standing contains three elements." *Id.* "First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal citations and quotation marks omitted). "Second, there must be a causal connection between the injury and the conduct complained of . . . ." *Id.* "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (internal quotation marks omitted).

In short, plaintiff must "demonstrate a personal stake in the outcome of the controversy." *No GWEN Alliance of Lane County, Inc. v. Aldridge*, 841 F.2d 946, 949 (9th Cir. 1988); *see also*, *Warth v Seldin*, 422 U.S. 490, 498 (1975) ("the standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy"). Therefore, cases recognize that a plaintiff has standing to file a lawsuit concerning an election when he or she has a personal interest in the outcome of the election. In *Erum v. Cayetano*, 881 F.2d 689, 691 (9th Cir. 1989) the Ninth Circuit held that voters have "standing to challenge . . . ballot access restrictions in [their] capacities as registered voter[s]." In *Imperial v. Castruita*, 418 F. Supp. 2d 1174, 1178 (C.D. Cal. 2006), the court held that plaintiffs had standing to challenge an election where they, as voters, "would be subject to an illegal election, in violation of federal and state elections law." In *Henderson v. Ft. Worth Independent School District*, 526 F.2d 286 (5th Cir. 1976), a voter wishing to support a particular potential candidate was found to have standing to challenge a state statute ballot requirements.

Significantly, Sixth Circuit cases explicitly hold that a plaintiff has standing to file a lawsuit concerning an election when he has a personal stake in the outcome of the election, while plaintiffs who lack standing are those who have no such personal stake. In *Miyazawa v. City of Cincinnati*, 45 F.3d 126, 128 (6th Cir. 1995), the Sixth Circuit differentiated between cases in

which the plaintiff "had a personal stake in the outcome of the election," and cases in which the plaintiff did not have a personal stake. Only the former have standing. *Id.* Applying the Sixth Circuit's decision in *Miyazawa*, the court in *Citizens for Legislative Choice v. Miller*, 993 F. Supp. 1041 (E.D. Mich. 1998), held that there are three instances where a plaintiff has "a personal stake in the outcome of the election" (*id.* at 1044) sufficient to establish standing:

    1. Plaintiff "was a potential candidate;"

    2. Plaintiff "was a supporter of the potential candidate;" or

    3. Plaintiff "was unable to vote for his candidate of choice due to the subject law."

*Id.*

    Here, plaintiff is not merely a "potential candidate." Rather he is an *actual* AIP candidate for the California Electoral College. Further, he is not merely "a supporter of a potential candidate." Rather, he will cast his electoral vote for the AIP candidate, Alan Keyes, if he can. He plainly has "a personal stake in the outcome of the election" sufficient to establish his standing. *Miyazawa v. City of Cincinnati*, 45 F.3d 126, 128 (6th Cir. 1995); *see also*, *No GWEN Alliance of Lane County, Inc. v. Aldridge*, 841 F.2d 946, 949 (9th Cir. 1988) (plaintiff has standing in election challenge if he has "personal stake in the outcome of the controversy"). More specifically, these circumstances plainly establish an injury-in-fact under the three basic standing requirements announced by *Lujan*. First, the threat to plaintiff's electoral vote by the Republican's ineligible candidacy is particularized and not hypothetical. *Lujan*, 504 U.S. at 560. Second, as the Republicans themselves do not dispute, there is an inevitable link between the Republican's ineligible candidacy and the threat to plaintiff's electoral vote. Finally, it is likely (and indeed certain) that plaintiff's injury will be redressed by a favorable decision: if the Court enjoins McCain's name from appearing on the ballot, plaintiff will certainly not lose his electoral vote to the Republican's ineligible candidate. *Id.* (internal quotation marks omitted).

    Short of a presidential candidate, it is difficult to conceive of a party with a greater personal interest in a presidential election. Indeed, it is unclear whether even a presidential candidate would have greater standing than an electoral candidate: unlike a presidential candidate, an electoral candidate is *directly* elected from the general election. At any rate, there is little doubt

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

that, as an elector of a rival political party that is competing with Senator McCain on the same

ballot, plaintiff has "a personal stake in the outcome of the election" sufficient to establish his

standing to challenge the election. *Miyazawa v. City of Cincinnati*, 45 F.3d 126, 128 (6th Cir.

1995).

### B.    There is No Merit to the Republican's Argument that Plaintiff Lacks Standing Because, As An Electoral Candidate, His Name Is Not on the Ballot.

The Republicans make various creative efforts to persuade this Court that plaintiff lacks a

personal stake in this election despite the fact that his own electoral vote is at stake.  First, the

Republicans assert that plaintiff is not really asserting an injury-in-fact to his status as a

presidential elector.  Rather, the Republicans assert, plaintiff is asserting his status as a

"competitor" with Senator McCain.  Since the names of each party's presidential electors do not

appear on the ballot, the Republicans point out that plaintiff's name will not actually appear on the

California ballot, but McCain's name will.  Therefore, the Republicans insist that plaintiff is not

technically a "competitor" of McCain, and he therefore lacks standing.

At the outset, plaintiff is not aware of any authority requiring that a plaintiff's name must

appear on the ballot for him or her to have standing to challenge an election process, and the

Republican's papers certainly do not cite anything for such a restrictive conclusion.  In any event,

the issue, as set forth above, is whether plaintiff has a "personal stake in the outcome of the

election." *Miyazawa v. City of Cincinnati*, 45 F.3d 126, 128 (6th Cir. 1995); *see also*, *Erum v.*

*Cayetano*, 881 F.2d 689 (9th Cir. 1989).  Here, plaintiff's electoral vote is at stake.  He has

standing. [1]

---

[1] The Republicans also state that plaintiff's status as a designated AIP presidential elector is in
question and may be stripped by another action, *King v. Bowen.*  (Defs. Mo. Dismiss. At 3:17-21.)
Plaintiff can unequivocally represent that no such threat to plaintiff's status as an AIP presidential
elector exists because the *King* case was dismissed August 26, 2008 – two days *before* the
Republicans made that representation in their August 28 Motion to Dismiss.  The minute order is
attached as Exhibit A.

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

*Robinson v. Secretary of State, et al.*

C.    **Plaintiff Need Not Demonstrate The AIP Will Win the November Election to Establish Standing.**

The Republicans assert that the AIP will probably not win the election no matter who they run against, and therefore plaintiff will probably not get to cast his electoral vote even if McCain is disqualified.  Therefore, the Republicans conclude that plaintiff's standing fails under the requirement that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. at 560.  To put it more bluntly, the Republicans' position asserts that, only the Democrats could challenge a Republican candidate, and *vice versa*, because no other party will likely win and therefore no other party can demonstrate that a favorable ruling would make a difference to them.

At the outset, this position flies in the face of equal-protection principles, because it effectively provides that only major parties can challenge elections, thereby denying judicial relief to minor parties altogether.  *Cf. Patriot Party v. Allegheny County Dep't of Elections*, 95 F.3d 253, 269 (3d Cir. 1996) (finding equal-protection violation where "Pennsylvania election laws treat major and minor parties differently").  In any event, plaintiff is at a loss for who would have standing to challenge an election unless they had some means of proving who is going to win.  There is no authority for this draconian position and analogous authority rejects it.  *See, e.g.*, *Fulani v. League of Women Voters Educ. Fund*, 882 F.2d 621, 626 (2d Cir. 1989) (minor presidential candidate's exclusion from presidential debate implicates injury-in-fact because of the minor candidate's "loss of competitive advantage" in presidential race).  In any event, plaintiff can and does allege an injury-in-fact that is neither remote nor speculative: absent judicial intervention, plaintiff faces the likelihood that he will lose his electoral vote to an ineligible candidate.

D.    **Plaintiff Has Standing Against the Republican Electors.**

Plaintiff's complaint also names the fifty-five Republican presidential electors as defendants, seeking to enjoin them from casting their votes for Senator McCain.  The Republicans argue that plaintiff's alleged injury is not "fairly traceable" to the Republican electors voting for

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

*Robinson v. Secretary of State, et al.*

1  president because, an injunction against the Republican electors would not restore his electoral

2  vote.

3       That is not the case.  The injury plaintiff seeks to redress is the threat to plaintiff's electoral

4  vote to by ineligible candidate.  Plaintiff is not alleging that he must be one of California electors.

5  He is merely alleging that Senator McCain must not be the candidate.  An injunction prohibiting

6  Senator McCain from receiving electoral votes– even if plaintiff is not one of the electors – will

7  remedy plaintiff's injury insofar as it will ensure that his electoral voice is not lost to an ineligible

8  candidate.

9       **E.     To the Extent Plaintiff Lacks Standing as an Individual AIP Presidential
              Elector, the Court Should Allow Plaintiff to Amend the Complaint to Add the
10             AIP as a Plaintiff.**

11      Much of the Republican's papers address that plaintiff's standing would be stronger if he

12  were the AIP Chairperson (rather than the Chairperson-elect) or if the AIP itself were a plaintiff.

13  Effective September 3, 2008, plaintiff is the AIP's chairman and has authority to add the AIP itself

14  as a plaintiff to this action.

15      As set forth above, plaintiff vigorously contends that he has a "personal stake in the

16  outcome of the election" requisite to standing because his electoral vote is at stake.  Nonetheless,

17  if the Republicans are correct that this is not enough, and that plaintiff's standing would be

18  stronger if this action proceeded with the AIP itself as a party, then the Court should allow

19  plaintiff to amend his complaint to add the AIP as a plaintiff.  Fed. R. Civ. P. 15.  Amendment will

20  not delay this action since the complaint's allegations will remain the same, and all defendants'

21  arguments brought under Rule 12(b) will be resolved by their pending motion.

22                                      **II.**

23                 **PLAINTIFF'S CLAIMS ARE JUSTICEABLE.**

24      The Republicans assert that plaintiff's challenge to McCain's ineligibility is a non-

25  justiceable political question.  The Republicans argue that the Twelfth Amendment grants the

26  Electoral College exclusive power to choose the President, and gives Congress power to "further

27  review" the Electoral College's decisions.

28

**WALSTON CROSS, ATTORNEYS**
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

*Robinson v. Secretary of State, et al.*

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

1    In *Baker v. Carr,* 369 U.S. 186 (1962), the Court set forth six independent criteria for the

2    existence of a political question:

3        [1] a textually demonstrable constitutional commitment of the issue to a coordinate
         political department; or [2] a lack of judicially discoverable and manageable
4        standards for resolving it; or [3] the impossibility of deciding without an initial
         policy determination of a kind clearly for nonjudicial discretion; or [4] the
5        impossibility of a court's undertaking independent resolution without expressing
         lack of the respect due coordinate branches of the government; or [5] an unusual
6        need for unquestioning adherence to a political decision already made; or [6] the
         potentiality of embarrassment from multifarious pronouncements by various
7        departments on one question.

8    *Id.* at 217.

9    The Republicans do not specify which of the above criteria mandates that McCain's

10   eligibility is a non-justiceable political question.  However, they do assert (incorrectly) that the

11   Twelfth Amendment grants coordinate branches of government authority to determine the

12   compliance of presidential candidates with Article II eligibility requirements.  Therefore, plaintiff

13   assumes that the Republicans are asserting the issue of McCain's eligibility is non-justiceable

14   under the first criterion.

15   The plain language of the Twelfth Amendment belies the Republican's position that other

16   branches of government have the exclusive constitutional authority to determine the compliance of

17   presidential candidates with Article II eligibility requirements.  The Twelfth Amendment is, in

18   fact, silent on how disputes of presidential candidates' eligibility are resolved.  It merely provides

19   the *process* of how Electors cast their votes, and further provides that Congress may act as a tie-

20   breaker in the event that no candidate gains the majority of electoral votes:

21
22       The Electors shall meet in their respective states, and vote by ballot for President and Vice-
         President, one of whom, at least, shall not be an inhabitant of the same state with
23       themselves; they shall name in their ballots the person voted for as President, and in
         distinct ballots the person voted for as Vice-President, and they shall make distinct lists of
24       all persons voted for as President, and all persons voted for as Vice-President and of the
         number of votes for each, which lists they shall sign and certify, and transmit sealed to the
25       seat of the government of the United States, directed to the President of the Senate..

26       . . .

27       [I]f no person have such majority, then from the persons having the highest numbers not
         exceeding three on the list of those voted for as President, the House of Representatives
28       shall choose immediately, by ballot, the President. But in choosing the President, the votes
         shall be taken by states, the representation from each state having one vote; a quorum for

- 10 -

*Robinson v. Secretary of State, et al.*

1    this purpose shall consist of a member or members from two-thirds of the states, and a
      majority of all the states shall be necessary to a choice.

2    U.S. CONST., AMEND. XII.

3        In short, the Twelfth Amendment contains no "textually demonstrable constitutional

4    commitment of the issue [of McCain's eligibility] to a coordinate political department." *Baker,*

5    369 U.S. at 217.  It certainly contains no provision that the Electors or Congress are to make

6    determinations of the compliance of the presidential candidate with Article II, much less that they

7    have exclusive ability to do so.  In other words, there is no "demonstrative textual commitment" of

8    this issue to another branch of government at all.  The Republicans have failed to show this issue

9    is a non-justiceable political question.

10                                        **III.**

11        **PLAINTIFF'S CLAIMS AGAINST THE SECRETARY ARE COGNIZABLE.**

12       The Republicans (but not Secretary Bowen) assert that plaintiff's claims against the

13   Secretary should be dismissed under Rule 12(b)(6).  Specifically, the Republicans argue that the

14   Court lacks authority to enjoin the Secretary under *Ex parte Young*, 209 U.S. 123, 152 (1908) and

15   the State's plenary power to choose its electors.  Neither argument has merit.

16
         **A.      Federal Courts Have Jurisdiction to Enjoin State Officials
17               from Violating the Constitution.**

18       State law requires the California Secretary of State to put McCain's name on the California

19   Ballot.  However, McCain's candidacy violates Article II of the U.S. Constitution.  Therefore,

20   plaintiff asks for an injunction precluding the Secretary from placing McCain's name on the ballot

21   in order to ensure California's presidential ballot complies with Article II.

22       The Republicans assert the Court cannot issue such an injunction because, under *Ex parte*

23   *Young,* "federal courts lack the authority to enjoin state officials from enforcing valid state laws."

24   (Defs. Mot. Dismiss at 10:1.)  The Republicans focus on the fact that plaintiff does not allege the

25   law requiring the Secretary to put McCain's name on the ballot is unconstitutional on its face.

26   Significantly, the Republicans simply ignore that the Secretary's act of placing McCain's name on

27   the ballot violates Article II because McCain does not meet Article II's eligibility requirements.

28

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

- 11 -

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

1    It is black-letter law that there are two kinds of constitutional challenges: facial challenges

2    – which allege a law is unconstitutional on its face – and "as applied" challenges – which allege

3    that a law, although valid on its face, is unconstitutional as applied to a specific circumstance.

4    *Black's Law Dictionary* 457 (7th ed. 1999).  Here, plaintiff is presenting the second type of

5    constitutional challenge.  McCain is ineligible for the presidency under Article II, and the

6    Secretary therefore cannot list him as a presidential candidate on the ballot consistent with Article

7    II.  It is well established that a federal court can enjoin a state official from enforcing a facially

8    valid state statute in a manner that, as applied, violates the Constitution.  "The court's power to

9    enjoin unconstitutional acts by the government is inherent in the Constitution itself."  *Hubbard v.*

10   *EPA,* 949 F.2d 453, n. 15 (D.C. Cir. 1991), *affirmed in part and reversed in part on other grounds,*

11   949 F.2d 453.

12         **B.      The State Does Not Have Plenary Power to Violate the Constitution.**

13         The Republicans assert that requiring the Secretary to remove McCain's name from the

14   ballot violates the State's plenary power to determine the manner of choosing its electors.

15   However, the State does not have plenary power to violate the Constitution itself.  Since the

16   Secretary's prospective act of placing a non "natural-born" citizen's name on a presidential ballot

17   offends Article II's plain language, the State's plenary power to choose electors does not insulate

18   it from the requested injunction.

19         Plaintiff concedes that state legislatures have exclusive power to choose the "manner" in

20   which electors are selected.  "Each State shall appoint, in such Manner as the Legislature thereof

21   may direct, a Number of Electors."  U.S. CONST., art. II, § 1, cl. 2.  As the Supreme Court has

22   recognized, the Constitution "leaves it to the legislature exclusively to define the *method* of

23   effecting the object [of appointing electors]."  *McPherson v. Blacker*, 146 U.S. 1, 27 (1892)

24   (*emphasis added*).

25         However, the states do not have plenary power to violate the Constitution.  Plenary power

26   must yield to constitutional requirements, and the presidential election process is no exception.  In

27   *Bush v. Gore*, 531 U.S. 98 (2000), the Republicans, represented by the same law firm and attorney

28   as they are in this action, successfully obtained federal judicial intervention in a state presidential

1  election process.  In a *per curiam* opinion expressing the view of Rehnquist, O'Connor, Scalia,

2  Kennedy, and Thomas, it was held that the Florida judiciary's recount decision violated the equal

3  protection clause of the Constitution's Fourteenth Amendment.  *Id.* at 110.  Additionally,

4  Rehnquist, Scalia and Thomas, concurring, in that result, expressing the view that the Florida

5  Supreme Court's recount decision violated Article II's requirement that the legislature, not the

6  judiciary, design the method of appointing electors.  *Id.* at 120-121.

7       The Republicans now take the opposite position, asserting that the federal judiciary cannot,

8  under any circumstances, intervene in the state process of choosing its presidential electors.  If that

9  position were correct, they would have failed in *Bush v. Gore*.  The Republicans cannot have it

10  both ways.  It would be odd indeed if Article II granted the states plenary power to violate Article

11  II itself.  As the Court recognized in *Bush*, that is not the case.  The states do not have plenary

12  power to violate the Constitution itself, and the state's plenary power to choose its presidential

13  electors must yield to constitutional requirements.  *Cf., Bush*, 531 U.S. at 110.

14       In this case, plaintiff asks the Court to require the Secretary to perform her duties in a way

15  that does not violate the text of Article II itself.  The Secretary's prospective act of placing a non

16  "natural-born" citizen's name on a presidential ballot offends Article II's plain language.  To the

17  extent that requiring the Secretary to recognize Article II's citizenship requirement by removing

18  the name of constitutionally ineligible presidential candidates from the ballot implicates the state

19  legislature's plenary power to choose the "manner" of how electors are chosen, there is nothing

20  improper in requiring the State's exercise of plenary power to conform to the Constitution itself.

21
22  **C.    An Injunction Prohibiting an Ineligible Candidate from Running for President Does Not Violate the First Amendment.**

23       The Republicans assert that the First Amendment precludes this Court from enjoining

24  Senator McCain from running for President.  According to the Republicans, if McCain is

25  ineligible, the First Amendment requires that he still be permitted to run, be elected, and only then

26  be disqualified.  The First Amendment does not require such futility and accompanying harm to

27  the political process.

28

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

*Robinson v. Secretary of State, et al.*

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94133
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

Specifically, the Republicans assert Senator McCain has two First Amendment rights implicated by running for office: freedom of his own expression and his party's freedom of association. For the former, the Republicans rely on *Mancuso v. Taft*, 476 F.2d 187, 195 (1st Cir. 1973). For the latter, the Republicans assert that, under *Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 359 (1997) a political party has a right to nominate a candidate, even when the candidate is "ineligible for office or unwilling to serve." (Defs. Mot. Dismiss at 13:10.)

At the outset, the Republican's partial quotation of *Timmons* is telling. The full quotation reveals that *Timmons* stands for the opposite proposition. It states that there is no associational right to run an ineligible candidate for office:

> [A] party, and not someone else, has the right to select [a] Party's "standard bearer." It does not follow, though, that a party is absolutely entitled to have its nominee appear on the ballot as that party's candidate. A particular candidate might be ineligible for office, unwilling to serve, or, as here, another party's candidate. That a particular individual may not appear on the ballot as a particular party's candidate does not severely burden that party's association rights.

*Id.* at 598-99; *see also Anderson* v. *Celebrezze*, 460 U.S. 780, 792, n. 12 (1983) ("Although a disaffiliation provision may preclude . . . voters from supporting a particular ineligible candidate, they remain free to support and promote other candidates who satisfy the State's disaffiliation requirements")

In other words, there is no associational right for a party to run an ineligible candidate. *Timmons,* 520 U.S. at 359. By axiom, the ineligible candidate's associational rights – which are the same as the rest of his party – are not infringed either. *Cf.*, *id.*. It would indeed be nonsensical to have eligibility requirements if any attempt to enforce those requirements violated the First Amendment.

To be sure, plaintiff concedes that, in the abstract, there are First Amendment interests implicated by running for political office. *San Francisco County Democratic Cent. Committee v. March Fong Eu*, 826 F.2d 814, 818 (9th Cir. 1987); *see also*, *Mancuso v. Taft*, 476 F.2d 187, 195 (1st Cir. 1973). However, just as the *Timmons* Court noted with respect to the right to association, a candidate's free-expression rights must yield to valid eligibility requirements. And the law is clear: when a candidate is ineligible or otherwise not a legitimate candidate, the First Amendment

WALSTON CROSS, Attorneys
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

1    does not require the futility – and accompanying harm to our political process – of allowing the

2    candidate to run, be elected, and only then be disqualified.

3        It is, at the outset, certainly not novel that a candidate's First Amendment rights must yield

4    to valid eligibility requirements, which are necessary to protect the integrity of elections:

> As the Supreme Court said in *Storer*, "as a practical matter, there must be a substantial
> regulation of elections if they are to be fair and honest and if some sort of order, rather than
> chaos, is to accompany the democratic processes." Thus, a state may restrict access to the
> ballot. Toward this end, a state may require that candidates meet minimum standards to
> qualify for the ballot in order to keep its ballots within manageable, understandable limits.

8    *San Francisco County Democratic Cent. Committee v. March Fong Eu*, 826 F.2d 814, 831 (9th

9    Cir. 1987).

10       When deciding whether a government action violates a candidate's First Amendment right

11   to run for office, a court should weigh the "character and magnitude" of the burden against the

12   interests that justify that burden. *Burdick* v. *Takushi*, 504 U.S. 428, 446-447 (1992) (quoting

13   *Anderson* v. *Celebrezze*, 460 U.S. 780, 789 (1983)). Governmental actions imposing severe

14   burdens must be narrowly tailored and advance a compelling state interest. Lesser burdens,

15   however, trigger less exacting review, and the government's interest in elections will usually be

16   enough to justify "reasonable, nondiscriminatory restrictions." *Burdick*, 504 U.S. at 434 (*quoting*

17   *Anderson*, 460 U.S. at 788). No bright line separates permissible election-related regulation from

18   unconstitutional infringements on First Amendment freedoms. *Storer* v. *Brown*, 415 U.S. 724,

19   730 (1974); ("No litmus-paper test . . . separates those restrictions that are valid from those that are

20   invidious . . . . The rule is not self-executing and is no substitute for the hard judgments that must

21   be made").[2]

---

[2] Each of the above cases – and most authority on this subject – addresses the issue in the context
of a statute rather than an injunction. However, like a statute, a trial court's issuance of an
injunction constitutes "state action" for purposes of First Amendment analysis. *See, e.g.,* The
issuance of the permanent injunction by the trial court constitutes "state action" for purposes of
constitutional analysis. *See Shelley v. Kraemer,* 334 U.S. 1, 17 (1948); *American Fed'n of Labor
v. Swing,* 312 U.S. 321 (1941). Therefore, Senator McCain is entitled to the same First
Amendment protections with regard to an injunction that affects his First Amendment rights as he
would be with a statute that affects them.

*Robinson v. Secretary of State, et al.*

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

1    Here, if Senator McCain is indeed constitutionally ineligible to serve as President, his

2    constitutional interest in a presidential run is minimal.  Specifically, his right to "express" that he

3    is qualified to be President, and that he can serve if elected, is attenuated because that message is

4    demonstrably incorrect.  Demonstrable falsehoods are not protected by the First Amendment in

5    the same manner as truthful statements.  *Brown v. Hartlage*, 456 U.S. 45, 60 (1982); *Gertz v.*

6    *Robert Welch, Inc.*, 418 U.S. 323, 340 (1974).  Thus, Senator McCain cannot be President in the

7    first instance, so preventing him from running will not have any effect except sparing the political

8    process the chaos of dealing with the issue *after* the election.  By contrast, if Senator McCain is

9    indeed ineligible, the government interest in preventing the turmoil of allowing him to run, likely

10   be elected, and only then disqualifying him, could not be higher.  The voters will not understand it

11   and will feel disenfranchised, thus doing untold harm to the legal and political process itself.

12   The interest in "ensuring viable candidates" is legitimate and justifies election restrictions.

13   *Rogers v. Corbett*, 468 F.3d 188, 194 (3d Cir. 2006).  Therefore, non-viable, illegitimate or

14   frivolous candidacies must yield to the "compelling interest in orderly elections."  *San Francisco*

15   *County Democratic Cent. Comm. v. March Fong Eu*, 792 F.2d 802, 814 (9th Cir. 1986), *vacated*,

16   479 U.S. 1024, *reaffirmed,* 826 F.2d 814.  This interest plainly encompasses "protecting the

17   integrity of the political process" (*Bullock*, 405 U.S. at 145), which justifies reasonable restrictions

18   on election activities.  *Id.*  Therefore, when a campaign is not "legitimate," the First Amendment is

19   not offended by denying that campaign access to the election process.  *Id.*

20   While plaintiff in no way means to minimize Senator McCain's outstanding

21   accomplishments, his constitutional ineligibility to serve as President render his candidacy non-

22   viable and illegitimate.  Given that illegitimacy – which can be resolved as a matter of law

23   forthwith – Senator McCain's minimal interest in running for an office in which he cannot serve is

24   overcome by the compelling governmental interest in sparing the nationwide legal and political

25   turmoil of dealing with the issue *after* November.  More specifically, if Senator McCain is, in fact,

26   constitutionally ineligible to serve as President, there is a legitimate and indeed compelling

27   interest in resolving that question now, sufficient to outweigh Senator McCain's minimal interest

28   in the futile act of running for an office in which he cannot serve.  By contrast, there is no First

*Robinson v. Secretary of State, et al.*

1    Amendment requirement that, despite his ineligibility, Senator McCain must still be permitted to

2    run, be elected, and only then be disqualified to serve as President.  The First Amendment does

3    not require such futility and accompanying harm to the political process.  Senator McCain's

4    ineligibility should be resolved on its merits now, not after the election.

5         **D.    Plaintiff's Claims Are Not Barred By The Twelfth Amendment.**

6         The Republicans assert that, under the Twelfth Amendment, the Court cannot enjoin the

7    Republican electors from voting for Senator McCain.

8         The Twelfth Amendment establishes the manner in which electoral votes are cast:

9         The Electors shall meet in their respective states, and vote by ballot for President and Vice-
         President, one of whom, at least, shall not be an inhabitant of the same state with
10        themselves; they shall name in their ballots the person voted for as President, and in
         distinct ballots the person voted for as Vice-President, and they shall make distinct lists of
11        all persons voted for as President, and all persons voted for as Vice-President and of the
         number of votes for each, which lists they shall sign and certify, and transmit sealed to the
12        seat of the government of the United States, directed to the President of the Senate..

13   U.S. CONST., AMEND. XII.

14        The only authority the Republicans cite for their position, other than the Twelfth

15   Amendment itself, is Federalist Number 68.  This is not the appropriate authority to frame the

16   issue.  As noted above, *Baker v. Carr,* 369 U.S. 186 (1962), provides the framework for whether

17   the judiciary cannot intrude into the affairs of a coordinate branch of government.  In that case, the

18   Court set forth six independent tests for the existence of a political question:

19        [1] a textually demonstrable constitutional commitment of the issue to a coordinate
         political department; or [2] a lack of judicially discoverable and manageable
20        standards for resolving it; or [3] the impossibility of deciding without an initial
         policy determination of a kind clearly for nonjudicial discretion; or [4] the
21        impossibility of a court's undertaking independent resolution without expressing
         lack of the respect due coordinate branches of the government; or [5] an unusual
22        need for unquestioning adherence to a political decision already made; or [6] the
         potentiality of embarrassment from multifarious pronouncements by various
23        departments on one question.

24   *Id.* at 217.

25        Here, since the Republicans assert that the Twelfth Amendment grants Electors exclusive

26   authority to determine who to vote for, plaintiff examines the first criterion.

27        At the outset, plaintiff is not asking the Court to force the electors to vote for a particular

28   candidate.  Plaintiff is simply asking the Court to determine that, under Article II's "natural-born"

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

*Robinson v. Secretary of State, et al.*

1    citizenship requirement, Senator McCain is not a proper presidential candidate, and by axiom he is

2    an inappropriate recipient of electoral votes.  Thus, the question is not whether the Court has

3    authority to override the judgment of Electors in regard to how they vote.  The question is who has

4    the constitutional authority to resolve disputes regarding presidential candidates' eligibility.

5         The plain language of the Twelfth Amendment belies the Republican's position that the

6    judiciary lacks constitutional authority to resolve these disputes.  The Twelfth Amendment is, in

7    fact, silent on how questions of presidential candidates' eligibility are resolved.  It merely provides

8    the *process* of how Electors cast their votes.  On its face, the Twelfth Amendment contains no

9    "textually demonstrable constitutional commitment of the issue [of McCain's eligibility] to a

10   coordinate political department."  *Baker,* 369 U.S. at 217.  It contains no provision that the

11   Electors or Congress are to make determinations of the compliance of the presidential candidate

12   with Article II, much less that they have exclusive ability to do so.  Indeed, vesting these questions

13   with Electors would be the ultimate gesture of futility.  Electors have departed from their party's

14   candidate only nine times of the 21,291 electoral votes recorded since 1796.  Luis Fuentes-Rohwer

15   and Guy Uriel Charles, *The Electoral College, the Right to Vote and Our Federalism: A Comment*

16   *on a Lasting Institution*, 29 FLA. ST. L. REV. 879, 896 (2000).

17        The Republicans have failed to establish that the Twelfth Amendment confers on Electors

18   exclusive authority – or even any authority – to resolve disputes concerning Article II eligibility of

19   presidential candidates.  Article II's eligibility requirements are not meaningless and courts have

20   the authority and duty to interpret them and apply them to live cases and controversies.  *Marbury*

21   *v. Madison*, 5 U.S. 137, 177 (1803)  ("It is emphatically the province and duty of the judicial

22   department to say what the law is").

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

*Robinson v. Secretary of State, et al.*

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

**IV.**

**THE REPUBLICANS HAVE FAILED TO RAISE
ANY ARGUMENT PLAINTIFF'S DECLARATORY
CLAIMS SHOULD BE DISMISSED.**

The Republicans do not assert any substantive argument that plaintiff's claims for declaratory relief should be dismissed. Rather, in a footnote, the Republicans assert that, once plaintiff's injunctive claims are dismissed, plaintiff is divested of his standing to proceed on his declaratory claims. The Republicans do not lodge any other objection to plaintiff's declaratory claims.

At the outset, as discussed above, plaintiff's injunctive claims should not be dismissed. Therefore, the Republican's argument is not implicated in the first instance.

Further, the dismissal of plaintiff's injunctive claims would not be fatal to plaintiff's standing to seek declaratory relief. The Republicans cite *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), for the proposition the dismissal of injunctive claims necessarily requires the dismissal of declaratory claims for lack of standing. (Defs. Mot. Dismiss at 15:24-25.) *MedImune* does not stand for such a sweeping conclusion. It certainly does not state that the dismissal of injunctive claims necessarily requires the dismissal of declaratory claims for lack of standing. Rather, it merely recites the well-established principle that the Article III "cases and controversies" requirement applies to claims for declaratory relief:

> *Aetna* and the cases following it do not draw the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not. Our decisions have required that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. In *Maryland Casualty Co.* v. *Pacific Coal & Oil Co.*, we summarized as follows: Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

> *Id*. (internal quotations and citations omitted).

Thus, the issue of plaintiff's standing to present his claims for declaratory relief must be resolved through application of the well-established Article III standing requirements. As noted above, as an AIP elector who has a stake in the outcome of the election, plaintiff's claims comply

with Article II standing requirements.  As a designated AIP presidential elector, plaintiff's

electoral vote is at stake in this election.  Plaintiff has "a personal stake in the outcome of the

election" sufficient to establish his standing to challenge the election.  *Miyazawa v. City of*

*Cincinnati*, 45 F.3d 126, 128 (6th Cir. 1995); *see also*, *No GWEN Alliance of Lane County, Inc. v.*

*Aldridge*, 841 F.2d 946, 949 (9th Cir. 1988) (plaintiff has standing in election challenge if he has

"personal stake in the outcome of the controversy").  More specifically, plaintiff's interest in the

outcome of the election plainly establishes an injury-in-fact under the three basic standing

requirements announced by *Lujan*.  First, the threat to plaintiff's electoral vote by the

Republican's ineligible candidacy is particularized and not hypothetical.  *Lujan*, 504 U.S. at 560.

Second, as the Republicans themselves do not dispute, there is an inevitable link between the

Republican's ineligible candidacy and the threat to plaintiff's electoral vote.  Finally, it is likely

(and indeed certain) that plaintiff's injury will be redressed by a favorable decision: if the Court

enjoins McCain's name from appearing on the ballot, plaintiff will certainly not lose his electoral

vote to the Republican's ineligible candidate.  *Id*. (internal quotation marks omitted).

     Thus, plaintiff has standing for to present his claims for declaratory relief by the same

token that he has standing to present his injunctive claims.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

- 20 -

1

## CONCLUSION

2      Despite the Republican's positions, Article II's eligibility requirements are not judicially

3  meaningless.  Rather, they can be judicially addressed and are properly addressed here.  Plaintiff

4  has standing because he him "a personal stake in the outcome of the election."  *Miyazawa v. City*

5  *of Cincinnati*, 45 F.3d 126, 128 (6th Cir. 1995); *see also*, *Erum v. Cayetano*, 881 F.2d 689 (9th Cir.

6  1989).  This question is plainly justiceable because there is no "textually demonstrable

7  constitutional commitment of the issue to a coordinate political department."  *Baker v. Carr,* 369

8  U.S. 186, 217 (1962).  And the notion that there is no federal jurisdiction over state presidential

9  election matters defies Supreme Court case law.  *Bush v. Gore*, 531 U.S. 98 (2000).  The

10  Republicans have failed to articulate any valid argument why these issues should not be addressed

11  on their merits, and their motion should be denied.

12  Dated: September 4, 2008                    WALSTON CROSS

13

14                                              By: Gregory S. Walston

15                                              ATTORNEYS FOR PLAINTIFF

16

17

18

19

20

21

22

23

24

25

26

27

28

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

*Robinson v. Secretary of State, et al.*

# EXHIBIT A

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SACRAMENTO
## GORDON D SCHABER COURTHOUSE
### MINUTE ORDER

Date: 08/26/2008                   Time: 09:00:00 AM        Dept:  31

Judicial Officer Presiding:  Judge Michael Kenny
Clerk: Susan Lee

Bailiff/Court Attendant: Greenwood,  D.
ERM: None
Reporter:  V. Haley #10771

Case Init. Date: 08/04/2008

Case No: 34-2008-80000016-CU-WM-GDS Case  Title:  James  King  Chairman  of  the  Amerian  Independent Party vs. Debra Bowen California Secretary of

Case Category: Civil - Unlimited

---

Causal Document & Date Filed:

---

**Appearances:**

 Robert G. Bernhoft is present for Petitioner, James King.
 Kathleen A. Lynch is present for Respondent, Debra Bowen and Real Party in Interest, Geoff Brandt.
 Gary G. Kreep appears telephonically for Real Party in Interest, Edward Noonan.

**NATURE OF PROCEEDINGS: PETITION FOR WRIT OF MANDATE**

The above-entitled matter comes on this date for hearing on the Petition for Writ of Mandate with the above-indicated counsel present.

Each counsel presents argument and submits the matter to the court.

**COURT RULING**

Petitioner James King seeks a writ of mandate directing the Secretary of State to (1) recognize King as the new Chairman of the American Independent Party ("AIP") along with various other officers, (2) recognize the party statement submitted by King for the American Independent Party, (3) recognize Chuck Baldwin as the AIP's presidential candidate rather than Allan Keyes, (4) recognize an affiliation between the AIP and the National Constitution Party. The petition is brought pursuant to Election Code §§ 9092 and 13314. The portion of the petition requesting relief under § 9092 was mooted, however, by the Secretary of State's decision not to include any party statements in the ballot pamphlet. The current dispute therefore centers on whether relief is proper under § 13314.

Section 13314(a) provides:

(1) Any elector may seek a writ of mandate alleging that an error or omission has occurred, or is about to occur, in the placing of any name on, or in the printing of, a ballot, sample ballot, voter pamphlet, or other official matter, or that any neglect of duty has occurred, or is about to occur.

(2) A peremptory writ of mandate shall issue only upon proof of both of the following: (A) that the error, omission, or neglect is in violation of this code or the Constitution, and (B) that issuance of the writ will not substantially interfere with the conduct of the election.

---

Case Title: James King Chairman of the American
Independent Party vs. Debra Bowen California

Case No.: 34-2008-80000010-CU-WM-GDS

Case 3:08-cv-03836-WHA    Document 29    Filed 09/04/2008    Page 29 of 30

Mr. King argues that the AIP held a convention and State Central Committee meeting in Los Angeles at which it properly elected new officers, selected Mr. Baldwin as their presidential candidate, and voted to affiliate with the National Constitution Party. Real Party in Interest Edward Noonan, currently recognized by the Secretary of State as the AIP Chairman, responds that the Los Angeles meetings and the actions taken therein were not valid, that a convention and State Central Committee meeting held by his faction in Rancho Cordova resulted in valid officer elections, selection of a presidential candidate, and affiliation with America's Independent Party of Fenton, Missouri, and that indispensable parties have not been joined to the present action. The Court will deal with the latter contention first.[1]

Mr. Noonan contends that the current action cannot go forward in the absence of several indispensable parties: (1) Allan Keyes and Wiley Drake, currently recognized by the Secretary of State as the AIP's selection for presidential candidate and vice-presidential candidate, respectively, (2) the officers of the AIP who would be removed prior to the ends of their terms on September 3, 2008 should the writ issue, and (3) the AIP presidential electors currently pledged to the candidacies of Mr. Keyes and Mr. Drake.

To determine whether the parties mentioned above are indispensable, the Court must first determine whether they are "necessary" under Code of Civil Procedure § 389(a). That section provides:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

If the Court concludes that the parties are necessary and cannot be joined, it must then "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person[s] being this regarded as indispensable." In making that determination, the Court considers the following four factors, none of which is alone determinative or of greater importance than the others:

(1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties;
(2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;
(3) whether a judgment rendered in the person's absence will be adequate;
(4) whether the [petitioner] will have an adequate remedy of the action is dismissed for nonjoinder.

(Cal. Code Civ. Proc. § 389(b); TG Oceanside, L.P. v. City of Oceanside (2007) 156 Cal.App.4th 1355, 1365-66.)

Mr. Keyes and Mr. Drake. Mr. Noonan argues that Mr. Keyes and Mr. Drake have substantial interests in remaining on the ballot as candidates. Mr. King responds that Mr. Keyes and Mr. Drake are not necessary parties because Mr. Noonan will vigorously defend their interests, citing TG Oceanside, L.P. v. City of Oceanside (2007) 156 Cal.App.4th 1355, 1369. In that case, however, as well as in the case relied on therein (Hayes v. Dep't of Dev. Servs. (2006) 138 Cal.App.4th 1523), the asserted indispensable party was a designee pursuant to statute of an entity who was already a party. Mr. King points to no law under which Mr. Keyes and Mr. Drake are the designees of Mr. Noonan. While Mr. Noonan has defended the selection of those candidates, the Court is not persuaded that one party's defense of an action, however vigorous, should mean that other parties with substantial interests in the action are not necessary absent some special relationship between the two parties. If the writ issues here, the Secretary of State will be directed to place Mr. King's candidates on the ballot and remove Mr. Keyes and Mr. Drake. Because the ballot must be finalized on August 28, 2008, Mr. Keyes and Mr. Drake will have no opportunity between the writ's issuance and the printing of the ballot to protect their interests in remaining on the ballot. Accordingly, the Court concludes that Mr. King and Mr. Drake are necessary parties.

The time constraints particular to election writs also leads the Court to conclude that Mr. Keyes and Mr. Drake may not now be feasibly joined and that a judgment in their absences would be highly prejudicial

Case  Title:  James  King  Chairman  of  the  American
Independent  Party  vs.  Debra  Bowen  California

Case No.: 34-2008-80000016-CU-WM-GDS

Case 3:08-cv-03836-WHA     Document 29     Filed 09/04/2008     Page 30 of 30

to those individuals, because issuance of the requested writ would result in their removal from the ballot without any opportunity to contest. There appears to be no way of shaping the writ so that such prejudice could be avoided or minimized.

The Court recognizes that dismissal of the petition for nonjoinder will mean that Mr. King's proposed candidates will not appear on the ballot. However, Mr. King knew from at least prior to June 28, 2008 (the date of the Los Angeles convention) that divisions within the party might lead to disagreement over the presidential and vice-presidential candidates. Instead of taking legal action at that time to resolve the matter, Mr. King chose to wait over a month and attempt to resolve the matter through an election writ subject to substantial time constraints. Moreover, Mr. King knew from the hearing held on August 8, 2008 that the question of indispensable parties would be an issue in the case but made no attempt to have Mr. Keyes, Mr. Drake, or any of the other asserted indispensable parties joined to the action. Under these circumstances, the Court concludes that Mr. Keyes and Mr. Drake are indispensable parties. Because it will not be possible to join them and thereafter determine the merits of the case before the ballot's finalization, the Court dismisses the petition without prejudice. (See Younger v. Jordan (1954) 42 Cal.2d 757 [denying petition seeking to remove candidate from ballot under § 13314's predecessor statute because such candidate was indispensable party and not enough time existed for her service and a determination of the merits prior to the printing of the ballots].)

As the resolution of the indispensable parties issue with regard to Mr. Keyes and Mr. Drake requires dismissal of the action, the Court need not address the remaining issues raised by the parties.

Real Parties, as prevailing parties, shall prepare a formal order for the Court's signature pursuant to C.R.C. 3.1312.