JOSHUA D. HESS, SBN 244115
JHess@gibsondunn.com
One Montgomery Street
Suite 3100
San Francisco, California 94104
Telephone: (415) 393-8200
Facsimile: (415) 986-5309

[additional counsel listed on signature page]

Attorney for Defendants
SENATOR JOHN MCCAIN and THE
REPUBLICAN NATIONAL COMMITTEE

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARKHAM ROBINSON,<br><br>          Plaintiff,<br><br>v.<br><br>SECRETARY OF STATE DEBRA BOWEN, THE REPUBLICAN NATIONAL COMMITTEE, THE REPUBLICAN PARTY OF CALIFORNIA, SENATOR JOHN MCCAIN,<br><br>          Defendants. | CASE NO. C 08-03836 WHA<br><br>**OPPOSITION OF DEFENDANTS SENATOR JOHN MCCAIN, THE REPUBLICAN NATIONAL COMMITTEE, AND THE CALIFORNIA REPUBLICAN PARTY TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Judge:         Hon. William H. Alsup<br>Hearing Date:  September 11, 2008<br>Time:         7:30 a.m.<br>Courtroom:    9 |

**TABLE OF CONTENTS**

<u>Page</u>

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

    PLAINTIFF CANNOT SATISFY ANY OF THE PREREQUISITES TO THE
    ISSUANCE OF A PRELIMINARY INJUNCTION. ............................................................... 3

        A.    Plaintiff Has No Likelihood Of Succeeding On The Merits Of
            His Claims .............................................................................................................. 3

        B.    Plaintiff Will Not Be Irreparably Harmed By The Denial Of A
            Preliminary Injunction ......................................................................................... 10

        C.    The Balance Of Hardships Weighs Strongly In Favor Of
            Denying Plaintiff's Request For A Preliminary Injunction ................................. 11

        D.    The Public Interest Unquestionably Favors Denying Plaintiff's
            Request For A Preliminary Injunction ................................................................. 11

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boumediene v. Bush*, 128 S. Ct. 2229 (2008) .................................................................... 8

*Bowsher v. Synar*, 478 U.S. 714 (1986) ............................................................................ 5

*Chalk v. U.S. Dist. Court*, 840 F.2d 701 (9th Cir. 1988) ................................................ 11

*County Court v. Allen*, 442 U.S. 140 (1979) .................................................................... 2

*O'Connor v. United States*, 479 U.S. 27 (1986) .............................................................. 8

*Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701 (9th Cir. 2007) ................................ 3

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v.
  U.S. Dep't of Agric.*, 415 F.3d 1078 (9th Cir. 2005) ............................................... 3, 10

*United States v. Wong Kim Ark*, 169 U.S. 649 (1898) ..................................................... 7

*Vermilya-Brown Co. v. Connell*, 335 U.S. 377 (1948) .................................................... 8

**Statutes**

Act of May 24, 1934, Pub. L. No. 73-250, 48 Stat. 797 ................................................... 5

British Nationality Act, 1730, 4 Geo. 2, c. 21 ................................................................... 5

Cal. Bus. & Prof. Code § 17200 ........................................................................................ 1

1 Stat. 103 (1790) .............................................................................................................. 5

8 U.S.C. § 1401(c) ............................................................................................................. 5

8 U.S.C. § 1403(a) .......................................................................................................... 6, 8

**Other Authorities**

Max Farrand, The Records of the Federal Convention of 1787 (1911) ............................ 5

Charles Gordon, Who Can Be President of the United States: The Unresolved Enigma,
  28 Md. L. Rev. 1 (1968) ................................................................................................ 4

*The President—Government of the Canal Zone,*
  26 Op. Att'y Gen. 113 (1907) ........................................................................................ 8

S. Res. 511, 110th Cong. (2008) ....................................................................................... 6

U.S. Const. amend. XIV, § 1 ............................................................................................. 7

Charles Alan Wright et al., *Federal Practice and Procedure* (1995) .......................... 4, 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Defendants Senator John McCain, the Republican National Committee ("RNC"), and the California Republican Party ("CRP") (collectively, "defendants") respectfully submit this Opposition to plaintiff's Motion for a Preliminary Injunction. In the event that this Court does not dismiss plaintiff's Complaint pursuant to defendants' pending Motion to Dismiss, the Court should deny plaintiff's motion because plaintiff cannot satisfy any of the criteria that govern the issuance of a preliminary injunction.

Plaintiff brought the instant complaint alleging that Senator John McCain is not a "natural born Citizen" within the meaning of the United States Constitution and is therefore ineligible for the Presidency because he was born on a U.S. military base in the Panama Canal Zone to U.S. citizen parents, including one who was serving his country on active duty with the United States Navy. Plaintiff seeks a preliminary injunction prohibiting: (1) Secretary of State Bowen from placing Senator McCain's name on the State's general election ballot; (2) Senator McCain from running for President; and (3) California's as-yet-unnamed Republican presidential electors from casting their ballots for Senator McCain in the Electoral College, in the event that Senator McCain wins California's general election for President.[1]

As set forth in defendants' Motion to Dismiss, plaintiff's claims fail as a matter of law because plaintiff lacks standing, seeks resolution of a nonjusticiable political question, and has failed to state a claim for which relief can be granted. Moreover, even if plaintiff's Complaint could survive the pending Motion to Dismiss, plaintiff would not be entitled to a preliminary injunction because he has not established any of the prerequisites to the issuance of a preliminary injunction.

Plaintiff has *no* likelihood of succeeding on the merits of his claims because Senator McCain is a "natural born Citizen" within the meaning of Article II of the United States Constitution. All the

---

[1] By stipulation and order dated September 2, 2008, the Court dismissed plaintiff's claims for injunctive relief prohibiting the RNC and CRP from naming Senator McCain as the Republican Party's nominee for President, and also dismissed in their entirety plaintiff's third and fifth causes of action, based on Section 17200 of the California Business and Professions Code.

available historical evidence—including the citizenship statute enacted by the First Congress and longstanding British tradition at the time of the Founding—demonstrates that the Framers considered children born overseas to U.S. citizen parents to be "natural born Citizens." Moreover, even if, as plaintiff contends, the question whether a person is a "natural born Citizen" were determined solely by the Fourteenth Amendment and federal statutes, Senator McCain obtained U.S. citizenship at birth under the Act of May 24, 1934, Pub. L. No. 73-250, § 1, 48 Stat. 797, because he was born to U.S. citizen parents in the Panama Canal Zone, which—if not sovereign U.S. territory—was an area "out of the limits and jurisdiction of the United States" within the meaning of that statute.

This Court, however, need not—indeed, it should not—address the merits of plaintiff's claims because plaintiff also fails to meet each of the other prerequisites to the issuance of a preliminary injunction and the Court should therefore dispose of his request for injunctive relief without reaching the novel constitutional questions he raises. *See County Court v. Allen*, 442 U.S. 140, 154 (1979) (federal courts have a "strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration"). Plaintiff cannot demonstrate, for example, that he would suffer irreparable harm in the absence of a preliminary injunction because defendants have already made clear that they "do not object to according this case some manner of expedited treatment." D.E. 19, at 3. In the event that plaintiff's Complaint is not dismissed outright, defendants would not oppose a reasonably expedited schedule for resolving his claims on the merits before the general election in November. Indeed, it is defendants who would be irreparably harmed by a preliminary injunction prohibiting Senator McCain from continuing his candidacy for the Presidency with less than two months to go in the closely contested general election campaign. The injunction could deprive Senator McCain of invaluable and irreplaceable time on the campaign trail and cast a cloud of uncertainty over his candidacy. The balance of hardships therefore weighs strongly against the issuance of an injunction. Moreover, the public—and, more specifically, the millions of voters who supported Senator McCain during the primary election and who will likely support him again during the general election—has a substantial interest in ensuring that Senator McCain's candidacy is not derailed by a preliminary injunction that plaintiff has requested on the strength of nothing more than a single, as-yet-unpublished law review article. The drastic and

DEFENDANTS JOHN McCAIN, REPUBLICAN NATIONAL COMMITTEE, AND CALIFORNIA REPUBLICAN PARTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

unprecedented step of granting plaintiff's request for injunctive relief should not even be seriously considered until this Court has conducted a full hearing on the merits of plaintiff's claims.

## ARGUMENT

**PLAINTIFF CANNOT SATISFY ANY OF THE PREREQUISITES TO THE ISSUANCE OF A PRELIMINARY INJUNCTION.**

A preliminary injunction is an "extraordinary remedy" to which a plaintiff is entitled only when it can meet a heavy burden of persuasion. *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 714 (9th Cir. 2007). In the Ninth Circuit, there are "two different"—but closely interrelated—"criteria for preliminary injunctive relief." *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 415 F.3d 1078, 1092 (9th Cir. 2005). "Under the traditional test, a plaintiff must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Id.* (internal quotation marks omitted). Under the "alternative test," a plaintiff must "demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Id.* (internal quotation marks and emphases omitted). Far from being completely distinct, "[t]hese two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.* (internal quotation marks omitted).

Plaintiff cannot satisfy either of these tests because he has no likelihood of succeeding on the merits of his claims and because the balance of hardships and public-interest considerations weigh sharply in favor of Senator McCain and the other defendants.

### A. Plaintiff Has No Likelihood Of Succeeding On The Merits Of His Claims.

Plaintiff contends that Senator McCain is not a "natural born Citizen" because he was born in the Panama Canal Zone in 1936 and allegedly did not become a citizen of the United States until Congress passed a 1937 statute conferring U.S. citizenship on persons born in the Canal Zone to one or more U.S. citizen parents. Prelim. Inj. Mtn. 10-11. Plaintiff further contends that Senator

3

DEFENDANTS JOHN McCAIN, REPUBLICAN NATIONAL COMMITTEE, AND CALIFORNIA REPUBLICAN PARTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

McCain's birth in the Canal Zone categorically disqualifies him from the Presidency because the "one way to become a 'natural born' citizen is to be born in the United States." *Id.* at 3.

As an initial matter, plaintiff concedes that "the issue of Senator McCain's eligibility to be President is novel" (Prelim. Inj. Mtn. 21) and that the only authority that he has been able to muster in support of his request for a preliminary injunction is the academic speculation of a still-unpublished law review article. *See id.* at 10 ("Plaintiff's argument here rests on the recent law-review article, Gabriel J. Chin, *Why Senator John McCain Cannot Be President: Eleven Months and a Hundred Yards Short of Citizenship*, Ariz. Legal Studies Discussion Paper No. 08-14"). The novelty of the question—and the paucity of support for plaintiff's reading of the Natural Born Citizen Clause—counsel strongly against the issuance of a preliminary injunction. *See* 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.3 (1995) ("In many cases the existence . . . of difficult questions of law[ ] may create sufficient doubt about the probability of plaintiff's success to justify denying a preliminary injunction.").

In any event, plaintiff's request for injunctive relief is authoritatively foreclosed by his erroneous reading of both the Natural Born Citizen Clause and the citizenship statute in force at the time of Senator McCain's birth.

1. Plaintiff incorrectly assumes that the question whether a person is a "natural born Citizen" is to be decided exclusively by reference to the Fourteenth Amendment and acts of Congress. Prelim. Inj. Mtn. 10. But the phrase had an established meaning at the time the Framers included it in the Constitution, and all the available evidence suggests that Senator McCain falls squarely within its scope.

It is generally accepted that the Framers included the Natural Born Citizen Clause in the Constitution in response to a 1787 letter from John Jay (then serving as the Continental Congress's Minister of Foreign Affairs) to George Washington (then presiding over the Constitutional Convention at Philadelphia) that suggested that the new Constitution prohibit "Foreigners" from attaining the position of Commander in Chief. *See* Charles Gordon, *Who Can Be President of the*

4

DEFENDANTS JOHN McCAIN, REPUBLICAN NATIONAL COMMITTEE, AND CALIFORNIA REPUBLICAN PARTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

*United States: The Unresolved Enigma*, 28 Md. L. Rev. 1, 5 (1968).[2] Although he was born in the Panama Canal Zone, Senator McCain is hardly a "Foreigner[ ]." He was born to two U.S. citizens, and Congress has recognized in successive federal statutes since the Nation's Founding that children born abroad to U.S. citizens are themselves U.S. citizens. 8 U.S.C. § 1401(c); *see also* Act of May 24, 1934, Pub. L. No. 73-250, § 1, 48 Stat. 797, 797. In fact, the statute that the First Congress enacted on this subject in 1790 not only established that such children are U.S. citizens, *but also expressly referred to them as "natural born citizens."* 1 Stat. 103, 104 (1790) (emphasis added); *see also id.* ("And the children of citizens of the United States, that may be born beyond sea, or out of the limits of the United States, shall be considered as natural born citizens."); *Bowsher v. Synar*, 478 U.S. 714, 723 (1986) (the views of the First Congress provide "contemporaneous and weighty evidence of the Constitution's meaning") (internal quotation marks omitted). And the First Congress's statutory recognition that persons born abroad to U.S. citizens were "natural born citizens" itself was in accord with the British tradition that necessarily informed the Framers' understanding of the Natural Born Citizen Clause. *See, e.g.*, British Nationality Act, 1730, 4 Geo. 2, c. 21 (children born abroad to parents who were "natural-born Subjects" were also "natural-born Subjects . . . to all Intents, Constructions, and Purposes whatsoever").

It is inconceivable that the Framers intended to exclude a child born of two U.S. citizens from holding the Office of President simply because of the historical accident that he or she happened to be born in a place that was not a State of the Union. And it is doubly inconceivable that the Framers intended to exclude such a child from holding the Office of President when he or she was born outside the continental United States only because the then-President dispatched his or her parents to that foreign location in the service of the United States. Put another way: Is there any reason to

---

[2] Jay wrote:

> Permit me to hint, whether it would not be wise & seasonable to provide a . . . strong check to the admission of Foreigners into the administration of our national Government; and to declare expresly that the Command in chief of the american army shall not be given to, nor devolve on, any but a natural *born* Citizen.

3 Max Farrand, *The Records of the Federal Convention of 1787*, at 61 (1911) (emphasis in original).

DEFENDANTS JOHN McCAIN, REPUBLICAN NATIONAL COMMITTEE, AND CALIFORNIA REPUBLICAN PARTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

believe that Minister of Foreign Affairs Jay, who spent several years abroad in the service of his country and during those years welcomed into the world three of his six children, could have meant that another child born to him and his wife in Madrid or Paris should be ineligible to hold the Office of President? Of course not.

2. The citizenship statutes in force at the time of Senator McCain's birth confirm that he is a "natural born Citizen" eligible for the Presidency.

Senator McCain was born in the Panama Canal Zone in 1936 to two U.S. citizen parents, one of whom was then on active duty with the United States Navy. If, as plaintiff contends, the Panama Canal Zone was not sovereign U.S. territory, then Senator McCain attained U.S. citizenship at birth under the Act of May 24, 1934, Pub. L. No. 73-250, § 1, 48 Stat. 797 ("Revised Statutes § 1993"), which granted citizenship to "[a]ny child hereafter born out of the limits and jurisdiction of the United States, whose father or mother or both at the time of the birth of such child is a citizen of the United States." Because Revised Statutes § 1993 conferred U.S. citizenship on Senator McCain by virtue of his birth in the Panama Canal Zone to two U.S. citizen parents, he is a "natural born Citizen" eligible for the Office of President and cannot plausibly be considered a "Foreigner[ ]" against whom the Natural Born Citizen Clause was directed.[3]

---

[3] There is no reason to suspect that Congress would have intended to exclude from the Presidency those persons denied U.S. citizenship through a scrivener's error or through a court's misreading of a citizenship statute. The Natural Born Citizen Clause must therefore encompass not only persons who are U.S. citizens *at the time of* their birth but also persons who are U.S. citizens *by virtue of* their birth. If an agency or court were to misconstrue a statute to deny citizenship at birth to a class of persons to whom Congress intended to grant citizenship at birth, Congress would therefore have the power to give effect to its earlier intent by granting that class citizenship at birth retroactively. Thus, even if there were ambiguity as to whether Revised Statutes § 1993 applied to the Canal Zone, there would still be no question that Senator McCain was a "natural born Citizen" because Congress's enactment of 8 U.S.C. § 1403(a) in 1937 authoritatively granted him citizenship by virtue of his birth in the Canal Zone. *See* 8 U.S.C. § 1403(a) ("Any person born in the Canal Zone on or after February 26, 1904, and whether before or after the effective date of this Act, whose father or mother or both at the time of the birth of such person was or is a citizen of the United States, is declared to be a citizen of the United States."). Of course, there is no such ambiguity in this case. Indeed, the resolution passed unanimously by the Senate expressing its belief that Senator McCain is a "natural born Citizen" would seem fairly to indicate that Congress did not, in 1934, intend to deprive persons in Senator McCain's position of eligibility to hold the Office of President. *See* S. Res. 511, 110th Cong. (2008).

In the face of this plain statutory text and unambiguous historical record, plaintiff contends that Senator McCain was not a citizen at the time of his birth because birth in the Panama Canal Zone purportedly did not fall within the scope of Revised Statutes § 1993 and that, even if Senator McCain is a citizen by virtue of his birth to U.S. citizen parents, his birth outside of the United States categorically excludes him from the Presidency. Plaintiff does not make a plausible showing—let alone, the requisite showing of a "strong likelihood of success"—as to either argument.

a. Plaintiff's reading of Revised Statutes § 1993 rests on the illogical proposition that the Panama Canal Zone was a "no man's land" at the time of Senator McCain's birth in 1936 and that—unlike children born to U.S. citizens in Panama itself—children born to U.S. citizens in the Canal Zone did not at that time obtain U.S. citizenship at birth. Under the plain terms of Section 1993, however, Senator McCain was a U.S. citizen upon his birth to U.S. citizen parents in the Canal Zone because, if the Canal Zone was not sovereign U.S. territory, then it was "out of the limits and jurisdiction of the United States" within the meaning of the 1934 statute. As the Supreme Court has recognized (and plaintiff himself acknowledges), the phrase "out of the limits and jurisdiction of the United States" is "the converse of" the language of the Fourteenth Amendment, which grants U.S. citizenship to all persons "born . . . in the United States, and subject to the jurisdiction thereof." U.S. Const. amend. XIV, § 1; *see also United States v. Wong Kim Ark*, 169 U.S. 649, 687 (1898) ("The words 'in the United States, and subject to the jurisdiction thereof,' in the first sentence of the Fourteenth Amendment of the Constitution, must be presumed to have been understood and intended by the Congress . . . [as] the converse of the words, 'out of the limits and jurisdiction of the United States'"); Prelim. Inj. Mtn. 16 (same). Section 1993 therefore encompassed all persons born to U.S. citizen parents who did not become U.S. citizens through force of the Fourteenth Amendment—that is, all persons who were not born in territory that was both part of "the United States and subject to the jurisdiction thereof" within the meaning of the Fourteenth Amendment. If the Panama Canal Zone was not part of the United States, then Senator McCain must have become a citizen at birth

7

under Section 1993 because he was born to U.S. citizen parents in a territory that was not within both the "limits and jurisdiction of the United States."[4]

Plaintiff's "no man's land" argument not only disregards the plain language and constitutional context of Section 1993, but also effectively denies U.S. citizenship to all persons born to U.S. citizen parents in unincorporated U.S. territories—such as the Philippines and other Pacific Islands—that were considered to be outside of the United States but under U.S. jurisdiction. Thus, under plaintiff's reasoning, a child born to U.S. citizen parents would have been a citizen at birth if born in a foreign country—like Panama—but would have been denied citizenship if born to parents serving their country in an unincorporated territory governed by the United States—like the Canal Zone. Such an untoward result defies logic and Congress's plain intent to bestow citizenship upon *all* children born overseas to U.S. citizen parents.

The fact that Congress in 1937 enacted a statute that explicitly grants U.S. citizenship to children born in the Canal Zone to U.S. citizen parents does not alter this conclusion. 8 U.S.C. § 1403(a). That statute was enacted by Congress in an abundance of caution to dispel any conceivable suggestion that children born to U.S. citizens in the Canal Zone were not U.S. citizens at birth. Although ultimately unnecessary, the statute merely confirms that Congress never intended to

---

[4] Alternatively, if the Panama Canal Zone was both part of "the United States and subject to the jurisdiction thereof," then Senator McCain acquired citizenship at birth under the Fourteenth Amendment—which even plaintiff acknowledges would make him a "natural born Citizen." Prelim. Inj. Mtn. 3. Both the U.S. Supreme Court and the other branches of the federal government have suggested that the Panama Canal Zone was sovereign U.S. territory when Senator McCain was born there. *See, e.g., O'Connor v. United States*, 479 U.S. 27, 28 (1986) ("[f]rom 1904 to 1979, the United States exercised sovereignty over the Panama Canal and the surrounding 10-mile-wide Panama Canal Zone"); *The President—Government of the Canal Zone*, 26 Op. Att'y Gen. 113, 116 (1907) (recognizing that the 1904 treaty between the United States and Panama "imposed upon the United States the obligations as well as the powers of a sovereign within the [Canal Zone]"). *But see Vermilya-Brown Co. v. Connell*, 335 U.S. 377, 381 (1948). To the extent that the *Insular Cases* may be read as being inconsistent with the application of the Fourteenth Amendment to the Canal Zone, the reasoning of those decisions has been called into question by the Supreme Court's recent holding in *Boumediene v. Bush*, 128 S. Ct. 2229 (2008), that the constitutional guarantee of habeas corpus applies with full force to the Guantanamo Bay Naval Station, even though Cuba retains ultimate sovereignty over that U.S. military base. *Id.* at 2240.

DEFENDANTS JOHN McCAIN, REPUBLICAN NATIONAL COMMITTEE, AND CALIFORNIA REPUBLICAN PARTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

deny U.S. citizenship to children born in the Canal Zone to U.S. citizen parents—and that any reading of Section 1993 that endorsed such a result would be truly absurd.[5]

b. Plaintiff further argues that, even if Senator McCain did acquire citizenship by virtue of his birth to two U.S. citizen parents, his birth outside of the United States categorically excluded him from the scope of the Natural Born Citizen Clause.

Plaintiff's argument that birth within the United States is the sole means of attaining natural born citizenship is flatly at odds with the historical underpinnings of the Natural Born Citizen Clause. Indeed, plaintiff does not even attempt to demonstrate that the Framers would have intended to exclude from the Presidency a child born overseas to U.S. citizen parents or that children born overseas to British subjects at the time of the Founding were not natural born subjects of Great Britain. Plaintiff's artificially narrow reading of the Natural Born Citizen Clause instead rests on the proposition that there are "only two ways to become a citizen"—by birth in the United States under the Fourteenth Amendment and by statute—and that only persons who attain citizenship under the Fourteenth Amendment are "natural born Citizens." Prelim. Inj. Mtn. 10. But plaintiff's attempt to link natural born citizenship to the Fourteenth Amendment and to exclude from the Presidency anyone who obtained citizenship under a statute is deeply flawed because it disregards the fact that, before the ratification of the Fourteenth Amendment in 1868, the *only* way to become a citizen of the United States was through a statute. It therefore cannot be the case that natural born citizenship is limited to persons who acquire citizenship under the Fourteenth Amendment—if it were, many of our Nation's early Presidents would have been constitutionally ineligible for office.

As the historical record indicates, the Natural Born Citizen Clause was intended to exclude from the Presidency "Foreigners" who obtained U.S. citizenship not by virtue of their birth but

---

[5] Plaintiff's reliance on Section 1993 to support his request for a preliminary injunction is misplaced for the additional reason that plaintiff's Complaint alleges that "Senator McCain was born in the Commonwealth of Panama in 1936," rather than in the Canal Zone. Compl. ¶ 17. Although Senator McCain was indeed born in the Canal Zone, plaintiff's request for injunctive relief should be evaluated based on the allegations in his Complaint, and because the Complaint alleges that Senator McCain was born in a territory that was indisputably "out of the limits and jurisdiction of the United States," those allegations are inconsistent with plaintiff's argument that Senator McCain would not have acquired citizenship at birth under Section 1993.

DEFENDANTS JOHN McCAIN, REPUBLICAN NATIONAL COMMITTEE, AND CALIFORNIA REPUBLICAN PARTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

through a naturalization process that conferred citizenship on them without regard to the circumstances of their birth. Senator McCain—the child of two U.S. citizens stationed on a U.S. military base on the Canal Zone—acquired U.S. citizenship by virtue of his birth and is therefore unquestionably a "natural born Citizen" eligible for the Presidency.

### B.    Plaintiff Will Not Be Irreparably Harmed By The Denial Of A Preliminary Injunction.

Even if plaintiff could demonstrate the requisite "strong likelihood of success on the merits" of his claims, he still would not be entitled to a preliminary injunction because he has not established the "possibility of irreparable injury . . . if preliminary relief is not granted." *Ranchers Cattlemen*, 415 F.3d at 1092 (internal quotation marks omitted).

Plaintiff alleges that, in the absence of a preliminary injunction, he will be irreparably harmed because "there is no way to monetarily compensate plaintiff for facing the prospect of losing his electoral vote" to a purportedly illegal campaign. Prelim. Inj. Mtn. 19. While plaintiff may be correct that monetary damages would not adequately compensate him for the illegal deprivation of his electoral vote, he has not demonstrated that the imposition of a preliminary injunction is necessary during the pendency of this case to prevent plaintiff from suffering that alleged harm. Indeed, this supposed harm—the loss of his right to cast a vote as a member of the Electoral College—will be inflicted on plaintiff only *after* the State of California holds its general election on November 4, 2008 (and only if Senator McCain wins that election).

Defendants have already made clear, however, that they "do not object to according this case some manner of expedited treatment" that would permit a final resolution in advance of the general election. D.E. 19, at 3. In the event that plaintiff's Complaint is not dismissed, defendants would not oppose a reasonably expedited briefing and hearing schedule for resolving plaintiff's claims on the merits. A preliminary injunction is therefore unnecessary to prevent irreparable harm to plaintiff because, if this case proceeds to the merits, the Court will be able to grant plaintiff the injunctive relief that he seeks after a full hearing on the merits. *See* 11A Wright et al., *supra*, § 2948.1 ("Only when the threatened harm would impair the court's ability to grant an effective remedy is there really

DEFENDANTS JOHN McCAIN, REPUBLICAN NATIONAL COMMITTEE, AND CALIFORNIA REPUBLICAN PARTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

a need for preliminary relief. Therefore, if a trial on the merits can be conducted before the injury would occur there is no need for interlocutory relief.").

### C. The Balance Of Hardships Weighs Strongly In Favor Of Denying Plaintiff's Request For A Preliminary Injunction.

The Motion for a Preliminary Injunction should also be denied because the balance of hardships unquestionably tips in favor of defendants. Indeed, it is Senator McCain—not plaintiff—who is confronted with the prospect of irreparable harm based on the Court's disposition of plaintiff's request for a preliminary injunction.

Senator McCain is currently engaged in a vigorous and closely contested campaign for the Presidency. With the general election only two months away, each day before the election presents Senator McCain with an invaluable opportunity to connect with voters on the campaign trail, in the media, and through campaign advertisements. The entry of a preliminary injunction prohibiting Senator McCain from continuing his candidacy for the Presidency at this critical juncture would irreparably harm his prospects of being elected by denying him the opportunity to communicate his campaign message to voters and by generating uncertainty in voters' minds as to whether Senator McCain will ultimately appear on the November ballot. Even if the preliminary injunction were later dissolved by this Court or reversed on appeal, Senator McCain's candidacy might never recover from the harm occasioned by that injunction.

Accordingly, in the event that plaintiff's Complaint is not dismissed, this Court should allow Senator McCain's campaign to proceed while the merits of this case are being resolved. Indeed, the "basic function of a preliminary injunction is to preserve the *status quo* pending a determination of the action on the merits." *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988). Because a preliminary injunction prohibiting Senator McCain from continuing his candidacy would obliterate, rather than preserve, the status quo, a preliminary injunction is plainly inappropriate.

### D. The Public Interest Unquestionably Favors Denying Plaintiff's Request For A Preliminary Injunction.

Finally, a preliminary injunction is inappropriate for the additional reason that the public interest weighs strongly in favor of allowing Senator McCain to continue his candidacy for the

Presidency. There is a significant public interest in ensuring that—except in the most compelling and necessary circumstances—courts refrain from interfering in an ongoing election process. Millions of voters supported Senator McCain during the Republican primaries, and millions more are expected to support him during the upcoming general election. The Court should not deny these citizens their constitutional right to vote for the candidate of their choosing in the absence of indisputable legal and factual proof that Senator McCain is ineligible for the Presidency. Plaintiff's motion—which presents little more than speculation and conjecture to support its extraordinary request for a preliminary injunction—does not even come close to meeting that high threshold.

For all these reasons, Senator McCain's candidacy for the Presidency should be allowed to continue pending final resolution of this case on the merits.

## CONCLUSION

In the event that plaintiff's Complaint is not dismissed, plaintiff's Motion for a Preliminary Injunction should be denied.

Respectfully submitted,

DATED: September 4, 2008

By: _____/s/Joshua D. Hess_____
    Joshua D. Hess

Theodore B. Olson, SBN 38137
Matthew D. McGill (*pro hac vice* admission pending)
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 887-3680

*Attorneys for Defendants*
SENATOR JOHN MCCAIN AND THE
REPUBLICAN NATIONAL COMMITTEE

BELL, McANDREWS & HILTACHK, LLP

By: _____/s/Charles H. Bell, Jr._____
        Charles H. Bell, Jr.

*Attorney for Defendant*
CALIFORNIA REPUBLICAN PARTY

DEFENDANTS JOHN McCAIN, REPUBLICAN NATIONAL COMMITTEE, AND CALIFORNIA REPUBLICAN PARTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

**ATTESTATION OF PERMISSION TO ELECTRONICALLY SIGN FOR OTHER PARTIES**

I, Joshua D. Hess, am the ECF User whose identification and password are being used to file this document, Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction. I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories, and that each of the signatories has provided me with written permission to sign their names to this document.

                 /s/*Joshua D. Hess*
                 Joshua D. Hess

DEFENDANTS JOHN McCAIN, REPUBLICAN NATIONAL COMMITTEE, AND CALIFORNIA REPUBLICAN PARTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1  JOSHUA D. HESS, SBN 244115
   JHess@gibsondunn.com
2  One Montgomery Street
   Suite 3100
3  San Francisco, California 94104
   Telephone: (415) 393-8200
4  Facsimile: (415) 986-5309

5  Attorneys for Defendants
   SENATOR JOHN S. McCAIN, III and
6  THE REPUBLICAN NATIONAL COMMITTEE

7

8                  UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12  MARKHAM ROBINSON,                    CASE NO. C 3:08-cv-03836 WHA

13              Plaintiff,                **CERTIFICATE OF SERVICE ON OPPOSITION OF DEFENDANTS TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

14         v.

15  SECRETARY OF STATE DEBRA BOWEN,
    THE REPUBLICAN NATIONAL
16  COMMITTEE, THE REPUBLICAN PARTY     [Honorable William H. Alsup]
    OF CALIFORNIA, SENATOR JOHN S.
17  McCAIN, III, et al.

18              Defendants.

19

20       I, Diana Reger, declare as follows:

21       I am employed in the office of a member of the bar of this Court, at whose direction this
22  service is made; I am over the age of eighteen years and am not a party to this action; my business
    address is One Montgomery Street, 31st Floor, San Francisco, California 94104, in said County and
23  State. On September 4, 2008, I served the within:

24       **OPPOSITION OF DEFENDANTS SENATOR JOHN MCCAIN, THE
         REPUBLICAN NATIONAL COMMITTEE, AND THE CALIFORNIA
25       REPUBLICAN PARTY TO PLAINTIFF'S MOTON FOR A PRELIMINARY
         INJUNCTION**
26

27  As indicated below:

28

                                    1

CERTIFICATE OF SERVICE                                    Case No. C 08-cv-03836 WHA

| | | |
|---|---|---|
| 1 | ☑ | **BY USDC LIVE SYSTEM-DOCUMENT FILING SYSTEM:** On all interested parties registered for efiling. |
| 2 | ☐ | **BY PERSONAL SERVICE:** I placed a true copy in a sealed envelope addressed to each person[s] named at the address[es] shown and giving same to a messenger for personal delivery before 5:00 p.m. on the above-mentioned date. |
| 3 | ☐ | **BY OVERNIGHT SERVICE:** I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for delivery by overnight service. Pursuant to that practice, envelopes placed for collection at designated locations during designated hours are delivered to an overnight service carrier with a fully completed airbill, under which all delivery charges are paid by Gibson, Dunn & Crutcher, that same day in the ordinary course of business. |
| 4 | ☐ | **BY ELECTRONIC MAIL:** On the above-mentioned date, I served a full and complete copy of the above-referenced document[s] by electronic mail to the person[s] at the address[es] indicated |
| 5 | ☑ | **BY MAIL:** I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. |

The following parties were additionally served by mail, as previously indicated:

Gregory S. Walston, Esq.
Orestes Alexander Cross, Esq.
WALSTON CROSS
222 Columbus Avenue, Suite 420
San Francisco, CA 94133

CALIFORNIA SECRETARY OF STATE
Debra Bowen
1500 11th Street
Sacramento, CA 95814

Nathan R. Barankin
Deputy Attorney General
California Department of Justice
1300 I Street, Suite 125
Sacramento, CA 94244-2550

THE REPUBLICAN PARTY OF
CALIFORNIA
1201 K Street, #740
Sacramento, CA 95814

Charles H. Bell, Esq.
Bell, McAndrews & Hiltachk, LLP
455 Capitol Mall, Suite 801
Sacramento, CA 95814

I certify under penalty of perjury that the foregoing is true and correct, and that this Declaration of Service was executed by me on September 4, 2008, at San Francisco, California.

By: /s/Diana Reger
Diana Reger

Certificate of Service USDC.doc

2

CERTIFICATE OF SERVICE         Case No. C 08-cv-03836 WHA