Gregory S. Walston, State Bar No. 196776
Orestes Alexander Cross
WALSTON CROSS
222 Columbus Avenue, Suite 420
San Francisco, California 94133
Telephone: (415) 956-9200
Facsimile: (415) 956-9205
Email: gwalston@walstonlaw.com

ATTORNEYS FOR PLAINTIFF

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARKHAM ROBINSON,<br><br>    Plaintiff<br><br> v.<br><br>SECRETARY OF STATE DEBRA BOWEN, et al.<br><br>    Defendants. | Case No. CV-08-3836 JL<br><br>**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>**Date: September 11, 2008**<br>**Time: 7:30 a.m.**<br>**Courtroom: 9** |

## INTRODUCTION

This is not a case that will be resolved by evidence or disputed facts. The only question is whether McCain's 1936 birth in Panama renders him constitutionally ineligible to be President. Nobody benefits from delaying resolution of this purely legal question. If McCain is eligible, then simply resolving that issue will not hurt anyone. If, however, McCain is ineligible, then delaying resolution makes no sense. If McCain is in fact ineligible, then deciding the issue now gives the political process two months to decide what to do. By contrast, McCain's ineligibility were decided shortly before the election, the political process would face a last-minute solution that would be inherently chaotic. And if McCain's ineligibility were to be decided after the election (assuming, of course, that the issue is not moot then), there would be no opportunity to come up with any solution. The Republican Electors would have to decide whether to vote for McCain anyway or for someone else who was not on the ballot. Either solution leaves the American public to grapple with why they elected McCain and someone else became President.

- 1 -

*Robinson v. Secretary of State, et al.*

If McCain is, in fact, ineligible, then every day that goes by makes dealing with the issue more chaotic and damaging to our political process. If McCain is eligible, then resolving that issue now harms nobody. Either way, the issue should be resolved forthwith.

## ARGUMENT

### I.

### THE MERITS OF A CASE SHOULD BE RESOLVED IN PRELIMINARY PROCEEDINGS WHEN THERE IS A PURE QUESTION OF LAW AND A NEED FOR PROMPT RESOLUTION.

This case involves a pure question of law and no disputed facts, and there is a compelling need for early resolution. Under these circumstances, it is proper to resolve the merits of the case at the preliminary level, even if preliminary resolution effectively disposes of the rest of the case. "The necessity for an expeditious resolution often means that the injunction is issued on a procedure less stringent than that which prevails at the subsequent trial on the merits of the application for injunctive relief." *Thornburgh v. American College of Obstetricians & Gynecologists*, 476 U.S. 747, 755-56 (*overruled on other grounds by Planned Parenthood v. Casey*, 505 U.S. 833, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992).) *See also*, *United States Steel Corp*. v. *Fraternal Assn. of Steelhaulers*, 431 F.2d 1046, 1048 (CA3 1970); *Mayo* v. *Lakeland Highlands Canning Co*., 309 U.S. 310, 316 (1940).

The normal method of judicial resolution "is not inflexible. The Court on more than one occasion in this area has approved proceedings deviating from the stated norm." *Thornburgh*, 476 U.S. at 790. In *Youngstown Sheet & Tube Co*. v. *Sawyer*, 343 U.S. 579 (1952), the District Court had issued a preliminary injunction restraining the Secretary of Commerce from seizing the Nation's steel mills, and the Court of Appeals stayed the injunction. The Supreme Court found that the case was ripe for review, despite the early stage of the litigation, and went on to address the merits, even though resolution disposed of the case as a practical matter. *Id*. at 585.

Thus, pure questions of law can be resolved preliminarily, even if that resolution effectively disposes of the case. *Smith v. Vulcan Iron Works*, 165 U.S. 518, 525 (1897) (district court, and therefore reviewing court, "had authority to consider and decide the case upon its merits, and thereupon to render or direct a final decree dismissing the bill"). When time

constraints warrant, prompt resolution of pure questions of law at the preliminary stage is eminently appropriate. *Youngstown*, 343 U.S. at 585. Here, there are no disputed facts. The only question is whether McCain's 1936 birth in Panama renders him ineligible to be President. Every day that goes by makes this issue more difficult. The merits of this issue are a pure question of law that can be resolved through this motion. And in light of the time constraints and the public importance of McCain's eligibility, the issue should be resolved through preliminary proceedings.

## II.

## A PRELIMINARY INJUNCTION SHOULD ISSUE.

### A. Plaintiff Will Succeed on the Merits.

The Constitution provides that only "natural born" citizens can be President. U.S. CONST., art. II, § 1, cl. 5. Plain language compels that a person must be a citizen at birth in order to be a "natural born" citizen. Senator McCain's 1936 birth in the Panama Canal Zone fails that test because, at the time of his birth, Senator McCain's Panama birth did not confer citizenship on him.

#### 1. Under The Plain-Language Doctrine and Basic Textual Interpretation Principles, a "Natural Born" Citizen is One Who Was a Citizen at Birth.

The Republicans assert "it is inconceivable that the Framers intended to exclude a child born of two U.S. citizens from holding office simply because of the historical accident that he or she happened to be born in a place that was not a State of the Union." (Defs. Opp. at 5:17-20.) The Republicans specifically assert that, based on correspondence from John Jay, the Framers meant "non-foreigners" when they wrote "natural born citizens." To further support their position, the Republicans assert that 1 Stat. 103 referred to the children of U.S. parents as "natural born citizens." Finally, the Republicans point out that John Jay's children were born overseas, so he could not have meant to exclude the foreign-born children of U.S. citizens to be excluded by the "natural born" clause.

At the outset, it is far from "inconceivable" that the Framers would deny citizenship to children of U.S. parents. In the Act of April 14, 1802, 2 Stat. 155, *codified at* R.S. § 2172, the seventh Congress, which included Framers Gouverneur Morris and Abraham Baldwin, among others, did precisely that. The Act mandated that "[f]oreign-born children of persons who became

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

American citizens between April 14, 1802 and 1854 were aliens." *Montana v. Kennedy*, 366 U.S. 308, 311 (1961) (discussing the Act of April 14, 1802). Thus, under the Act, children of members of the armed forces serving overseas, and diplomats and civil servants in foreign posts were not only not "natural born citizens", ineligible to be President, they were not citizens at all. *Id.*

In any event, textual constitutional interpretation does not hinge on our twenty-first century perceptions as to what is "inconceivable." Nor does it hinge on what the Framers, who did not envision that the United States would have military bases all over the globe, would have done if they had thought about it. And it certainly does not turn on argumentative conjecture stemming from where John Jay's children were born.

Rather, these issues are resolved through the ordinary meaning of the text itself. From the earliest days of the Republic, the Supreme Court has held that the "words of the constitution are to be taken in their obvious sense." *Pollock v. Farmers' Loan & Trust Co.*, 158 U.S. 601, 618 (1895). As Chief Justice Marshall stated in *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 188 (1824), "the enlightened patriots who framed our constitution, and the people who adopted it, must be understood to have employed words in their natural sense, and to have intended what they have said." Sixty-five years later, Justice Lamar elaborated upon this rule for a unanimous Court:

> If the words convey a definite meaning, which involves no absurdity nor any contradiction of other parts of the instrument, then that meaning, apparent on the face of the instrument, must be accepted, and neither the courts nor the Legislature have the right to add to it or take from it.
>
> . . .
>
> Why not assume that the framers of the Constitution, and the people who voted it into existence, meant exactly what it says? At the first glance, its reading produces no impression of doubt as to the meaning. It seems all sufficiently plain; and in such a case there is the well settled rule which we must observe. The object of construction, applied to a Constitution, is to give effect to the intent of the framers, and of the people adopting it. This intent is to be found in the instrument itself; and when the text of a constitutional provision is not ambiguous the courts, in giving construction thereto, are not at liberty to search for meaning beyond the instrument.

*The Board of County Commissioners v. Rollins*, 130 U.S. 662, 670 (1889).

Courts have never departed from these principles. *Nixon v. United States*, 506 U.S. 224, 229 (1993). In short, unless the Constitution's terms are absurd or contradictory they should be applied in their ordinary meaning. *Id.* Here, the Republicans struggle to establish that, in

choosing the words "natural born" citizen, the Framers meant something other than the ordinary meaning of those words – a citizen at birth. These attempts ring hollow. If, as the Republicans suggest, the Framers meant to exclude "foreigners" from office (which is an even less clear term), they could have written "non-foreigners" instead of "natural born citizens." If the Framers meant to exclude from office those who were not born to U.S. citizen parents, they could have written that instead. But they did not. Rather, the Framers wrote "[n]o person except a natural born Citizen . . . shall be eligible to the Office of President." U.S. CONST. art. II, § 1, cl. 5.

On its face, a "natural born" citizen means a citizen at birth. As set forth below, Senator McCain was not a citizen at birth, and is therefore not a "natural born" citizen.

### 2. John McCain Was Not a Citizen at Birth Under 8 U.S.C. 1401 And its predecessor, Act of May 24, 1934, Pub. L. No. 73-250 § 1, 48 Stat. 797.

The blunt rule applied by courts is that "[e]vidence of foreign birth gives rise to a presumption that the person so born is an alien." *Corona-Palomena v. INS*, 661 F.2d 814, 818 (9th Cir. 1981). Persons born in the Canal Zone are presumptively aliens. *See, In re Martiza Ellis A.K.A. Maritza M. Ellis*, 2006 WL 2008273 (BIA June 5, 2006).

The question is whether there was a statute conferring citizenship on Senator McCain at the time he was born. Since 8 U.S.C 1401 did not exist in 1936, the question is whether Senator McCain was a citizen under Congress' Act of May 24, 1934, Pub. L. No. 73-250, § 1, 48 Stat. 797 (§ 1993), which was enacted in 1934 and in place when McCain was born in 1936. That statute provides that "[a]ny child hereafter born out of the limits and jurisdiction of the United States, whose father or mother or both at the time of the birth of such child is a citizen of the United States, is declared to be a citizen of the Unites States." Pub. L. No. 73-250, § 1, 48 Stat. 797.

The Republicans assert that McCain was a citizen at birth under this language because, in 1936, the Panama Canal Zone was outside the "territory and jurisdiction" of the United States. The Republicans assert that the only alternative is that the Panama Canal Zone in 1936 was part of the "limits and jurisdiction" of the United States, which would make McCain a citizen at birth under the Fourteenth Amendment. In other words, in the Republicans' view, everywhere in the

world falls into one of two categories: either 1) within the "limits and jurisdiction" of the United States or 2) outside the "limits and jurisdiction" of the United States. Thus, according to the Republicans, in 1936 all children of U.S. parents were citizens at birth; children born within the "limits and jurisdiction" of the United States were citizens under the Fourteenth Amendment, and children born outside the "limits and jurisdiction" of the United States were citizens under § 1993. Either way, the Republicans conclude, Senator McCain was a citizen at birth because both of his parents were U.S. citizens.

### a. A Child Born to U.S. Parents in the Canal Zone in 1936 was Not a Citizen Because the Zone was Outside U.S. Limits But Inside U.S. Jurisdiction.

The Republicans' position fails to recognize that the Canal Zone in 1936 was outside U.S. limits but inside U.S. jurisdiction. Thus, Senator McCain's 1936 birth in Panama was outside the "limits" of the United States, so the Fourteenth Amendment did not confer citizenship, but it was within the "jurisdiction" of the United States, so § 1993 did not confer citizenship either.

The Constitution's text itself demonstrates that United States "jurisdiction" and the "United States" in a territorial sense are distinct concepts. "The 13th Amendment to the Constitution, prohibiting slavery and involuntary servitude 'within the United States, or in any place subject to their jurisdiction,' . . . show[s] that there may be places within the jurisdiction of the United States that are no part of the Union." *Downes v. Bidwell*, 182 U.S. 244, 251 (1901) (opinion of Brown J.). *See also, e.g., Rasul v. Bush*, 542 U.S. 466, 475 (2004) (United States has "plenary and exclusive jurisdiction" over Guantanamo, but not "ultimate sovereignty").

In *United States v. Wong Kim Ark*, 169 U.S. 649 (1898), the Court construed a passage of the 1855 version of what became § 1993; that language remained unchanged in the 1934 revision. The Court held that the phrases "jurisdiction" in § 1993 means the same thing as it does in the Fourteenth Amendment. *Id.* at 687. *Wong Kim Ark* further held that individuals are within a country's "jurisdiction" if they are in a place that obligates them to that nation. *Id. Wong Kim Ark* thus recognizes four categories. A person can be: 1) both in the United States and subject to its jurisdiction, *e.g.*, in San Francisco, California; 2) neither in the United States nor subject to its jurisdiction, *e.g.*, in Moscow, Russia; 3) in the United States but not subject to its jurisdiction, *e.g.*,

- 6 -
*Robinson v. Secretary of State, et al.*

a British soldier in Washington, D.C. during the War of 1812; or 4) out of the United States but subject to its jurisdiction, *e.g.*, inside a U.S. military base abroad. Only persons born in the first category are citizens by birth under the Fourteenth Amendment. Only those born in the second category to U.S. citizens are covered by § 1993. *Id.*

The Canal Zone is in the fourth category. Under doctrine of the *Insular Cases*, the House Committee on Immigration and Naturalization's conclusion that "Children of American parents in the Canal Zone are not outside the jurisdiction of the United States, neither are they within the limits of the United States" (H. Comm. on Immigr. and Naturalization, *Citizenship of Certain Classes of Persons born in the Canal Zone or Republic of Panama*, H.R. REP. NO. 75-1303, at 2 (1937)) is inescapable. As an unincorporated territory, the Canal Zone is not the "United States." In addition, many statutes and Attorney General Opinions recognized that the Canal Zone was under United States "jurisdiction." 30 Op. U.S. Atty. Gen. 271 (July 14, 1914) ("That the Canal Zone is 'territory under the control or jurisdiction' of the United States has been held in a long line of opinions by the Attorneys General."); 25 Op. U.S. Atty. Gen. 474 (June 5, 1905) (by treaty "the Canal Zone became subject to the jurisdiction of the United States").

### b. Legislative History Supports Plaintiff's Reading of § 1993.

It was the Canal Zone's status as a "no-man's land," where children born to U.S. citizen parents were not U.S. citizens themselves, that led Congress to amend § 1993. Members of Congress explicitly noted their concerns that "[e]ven children born within the limits of the Zone, which is under the jurisdiction of the United States, are not citizens." *See generally*, H. Comm. on Immigr. and Naturalization, *Citizenship of Certain Classes of Persons born in the Canal Zone*, H.R. REP. NO. 75-1303, at 1 (1937). In the Senate debate on the bill, Senator Bennett Clark said "existing law is changed" in that citizenship would be granted to children of U.S. citizens born in the Canal Zone. 81 CONG. REC. 6353 (1937). In the House, John Sparkman explained:

> The Canal Zone is not such foreign territory as to come under the law of 1855 [§ 1993] and, on the other hand, it is not part of the United States which would bring it within the fourteenth amendment; consequently there has been great doubt about the citizenship status of children born in the Canal Zone.

*Id.* at 7764.

Sparkman concluded: "The Canal Zone is a 'no-man's land.' Every place in the world except the Canal Zone has been covered either by the law of 1855 [§ 1993], which applies to foreign countries, or by the fourteenth amendment, which applies to the United States and its possessions." *Id*. at 7769.

In short, Senator McCain's 1936 birth in Panama was outside the "limits" of the United States, so the Fourteenth Amendment did not confer citizenship, but it was within the "jurisdiction" of the United States, so § 1993 did not confer citizenship either. In other words, he was not a citizen at birth, and is therefore not a "natural born" citizen.

**B.     Plaintiff Will Be Irreparably Harmed Without An Injunction.**

Though they concede that plaintiff's loss of his electoral vote to an ineligible candidate cannot be monetarily compensated, the Republicans assert that there is no need for preliminary relief because these issues can be resolved before the November election.

By the time this matter is heard, there will be less than two months before the November election. There is no reason to delay resolution of McCain's eligibility, and every reason to resolve it forthwith. If the Court finds McCain is eligible, the issue is over and the case will be effectively resolved. If, however, McCain is ineligible, then enjoining his campaign does not harm him because he could not have served anyway. It does, however, avoid irreparable harm to plaintiff, as even the Republicans concede that there is no monetary remedy for the plaintiff's prospective harm of losing his electoral vote to an ineligible candidate.

Significantly, the harm to the political process implicated by delaying resolution of this issue is severe. Deciding the issue now gives the political process two months to decide what to do. By contrast, if the issue were decided shortly before the election, the political process would face a last-minute solution that would be inherently chaotic and would strain the political process. And if the issue were to be decided after the election (assuming, of course, that the issue were not moot), there would be no opportunity to deal with the issue at all, leaving the individual Electors facing the *ad hoc* decision of whether to cast their electoral vote for Senator McCain anyway or vote for someone else who was not even on the ballot. Either way, the American electorate would have to grapple with why they elected John McCain and got either his running mate by operation

of law (U.S. CONST., AMEND. XX (Vice President-elect assumes Presidency if President-elect fails to qualify)), or someone else who was not even on the ballot but was elected by a last-minute, *ad hoc* agreement among Republican electors. Many members of the electorate will not understand what happened, and most will be critical and blame the legal and political processes.

### C. The Hardships Balance in Plaintiff's Favor.

The Republicans assert that the hardships balance in their favor because an injunction will disrupt their campaign. This position ignores the fact that, if McCain is enjoined, it is because he was ineligible to be President anyway. Thus, the only hardship McCain faces is being enjoined from running for an office he is ineligible for in the first instance.

Preliminary relief on the merits is, in fact, the only way to avoid hardship, and the best way of preserving the integrity of the political process itself. If plaintiff's arguments concerning McCain's ineligibility are wrong, there is absolutely no harm to anyone in resolving that issue now. If, however, plaintiff's arguments are right, then there is no harm to Senator McCain in preventing his run for an office he was ineligible for in the first instance. And preliminary resolution of this issue is particularly compelling given the unavoidable political and public turmoil that will result from resolving the issue later.

### D. The Public Interest Favors Preliminary Relief.

The Republicans assert that resolving this issue forthwith is contrary to the public interest because "[m]illions of voters support Senator McCain." (Defs. Opposition at 12:3-4.) This confuses the "public interest" with the interests of McCain supporters.

The public interest in resolving the issue of McCain's eligibility could not be stronger. If McCain is in fact ineligible, then delaying resolution of that issue strains common sense because dealing with McCain's ineligibility grows more difficult every day. If the issue is decided now, the there are two months to deal with it. If the issue is decided shortly before the election, or after it, then coming up with a solution, and implementing it, will strain the political process itself. Thus, addressing the issue properly – should we decide this issue now or later – the public interest is strong and weighs heavily against delay.

/ / /

WALSTON CROSS, ATTORNEYS
222 Columbus Avenue, Suite 420
San Francisco, California 94123
Telephone: (415) 956-9200
Facsimile: (415) 956-9205

# CONCLUSION

This motion presents a pure question of law that can be resolved forthwith. There is no harm in resolving it now, but the harm in delay is significant. Plaintiff respectfully asks the Court to resolve the merits of McCain's eligibility.

Dated: September 8, 2008

WALSTON CROSS

By: Gregory S. Walston

ATTORNEYS FOR PLAINTIFF