1  JOSHUA D. HESS, SBN 244115
   JHess@gibsondunn.com
2  One Montgomery Street
   Suite 3100
3  San Francisco, California 94104
   Telephone: (415) 393-8200
4  Facsimile: (415) 986-5309

5  Attorney for Defendants
   SENATOR JOHN MCCAIN AND THE
6  REPUBLICAN NATIONAL COMMITTEE

7  [additional counsel listed on signature page]

8                    UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12  MARKHAM ROBINSON,                    CASE NO. 08-CV-3836 WHA

13           Plaintiff,                  **REPLY OF DEFENDANTS SENATOR
                                         JOHN MCCAIN, THE REPUBLICAN
14      v.                               NATIONAL COMMITTEE, AND THE
                                         CALIFORNIA REPUBLICAN PARTY IN
15  SECRETARY OF STATE DEBRA BOWEN,      SUPPORT OF THEIR MOTION TO
    THE REPUBLICAN NATIONAL              DISMISS**
16  COMMITTEE, THE CALIFORNIA
    REPUBLICAN PARTY, and SENATOR JOHN   Hearing Date:   September 11, 2008
17  MCCAIN,                              Time:           7:30 a.m.
                                         Courtroom:      9
18           Defendants.                 Judge:          Hon. William H. Alsup

19

20

21

22

23

24

25

26

27

28

---

REPLY OF DEFENDANTS SENATOR JOHN McCAIN, THE REPUBLICAN NATIONAL COMMITTEE, AND THE
CALIFORNIA REPUBLICAN PARTY IN SUPPORT OF THEIR MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

I.    Plaintiff Has Failed To Demonstrate The Existence Of A Justiciable
Case Or Controversy ................................................................................................ 1

    A.    Plaintiff's Complaint Fails To Allege Facts Sufficient To
Establish His Standing To Bring His Claims For Relief............................. 1

    B.    Plaintiff's Complaint Demands Resolution Of A Nonjusticiable
Political Question ...................................................................................... 4

II.    Plaintiff's Opposition Confirms That His Complaint Does Not State A
Claim Upon Which Relief Can Be Granted ............................................................. 5

    A.    This Court Cannot Enjoin The Secretary Of State From
Enforcing Valid State Laws Enacted Pursuant To The State
Legislature's Plenary Authority To Select California's
Presidential Electors ................................................................................. 5

    B.    The First Amendment Does Not Permit This Court To Enjoin
Senator McCain From "Running" For President ...................................... 6

    C.    Plaintiff's Claim To Enjoin California's Republican Presidential
Elector Candidates From Voting For Senator McCain, If They
Become Electors, Is Barred By The Twelfth Amendment .............................. 8

    D.    Plaintiff's Claim For Declaratory Relief Must Be Dismissed
Because, Without His Claims For Injunctive Relief, It Would
Not Lead To Specific, Concrete Relief ...................................................... 8

III.    Plaintiff's Request For Leave To Amend His Complaint Should Be
Denied .................................................................................................................... 9

CONCLUSION ..................................................................................................................... 10

REPLY OF DEFENDANTS SENATOR JOHN McCAIN, THE REPUBLICAN NATIONAL COMMITTEE, AND THE
CALIFORNIA REPUBLICAN PARTY IN SUPPORT OF THEIR MOTION TO DISMISS

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937) ................................................ 9

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ........................................................ 6

*Arizonans for Official English v. Arizona*, 502 U.S. 43 (1997) ............................... 4

*Brown v. Hartlage*, 456 U.S. 45 (1982) ................................................................. 7

*Buckley v. Valeo*, 424 U.S. 1 (1976) ...................................................................... 6

*Bush v. Gore*, 531 U.S. 98 (2000) ......................................................................... 6

*Cohen v. Virginia*, 19 U.S. 264 (1821) .................................................................. 8

*Erum v. Cayetano*, 881 F.2d 689 (9th Cir. 1989) .................................................. 2

*Foman v. Davis*, 371 U.S. 178 (1962) ................................................................... 9

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ................................................. 7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................. 2

*McPherson v. Blacker*, 146 U.S. 1 (1892) ............................................................. 6

*Nixon v. United States*, 506 U.S. 224 (1993) ......................................................... 5

*Sacks v. Office of Foreign Assets Control*, 466 F.3d 764 (9th Cir. 2006) ................ 1

*Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646 (9th Cir. 2002) ...................... 4

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997) .............................. 7

*United States v. Munoz-Flores*, 495 U.S. 385 (1990) ............................................ 4

*W. Mining Council v. Watt*, 643 F.2d 618 (9th Cir. 1981) ..................................... 2

*Wheeling, P. & C. Transp. Co. v. City of Wheeling*, 99 U.S. 273 (1878) ................ 8

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ......................................................... 2

## STATUTES

3 U.S.C. § 15 .......................................................................................................... 4

Cal. Elec. Code § 6901 ............................................................................................ 5

REPLY OF DEFENDANTS SENATOR JOHN McCAIN, THE REPUBLICAN NATIONAL COMMITTEE, AND THE CALIFORNIA REPUBLICAN PARTY IN SUPPORT OF THEIR MOTION TO DISMISS

**REPLY OF DEFENDANTS SENATOR JOHN MCCAIN, THE REPUBLICAN NATIONAL COMMITTEE, AND THE CALIFORNIA REPUBLICAN PARTY IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants Senator John McCain, the Republican National Committee, and the California Republican Party respectfully submit the following reply memorandum in support of their motion to dismiss plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## INTRODUCTION

Plaintiff seeks to invoke the judicial power of the United States to validate his contention that the Republican Party's nominee for the office of President, Senator John McCain, is not a "natural born Citizen" eligible to hold that office because he was born in the Panama Canal Zone in 1936 to two United States citizens who had been dispatched to the Canal Zone in the service of the United States Navy. As demonstrated in the opposition to plaintiff's motion for a preliminary injunction filed by defendants Senator John McCain, the Republican National Committee, and the California Republican Party (D.E. 30), plaintiff's interpretation of Article II's Natural Born Citizen Clause— that the term "natural born Citizen" *excludes* persons born to two U.S. citizens in the Panama Canal Zone between 1904 and 1937, but *includes* any person born to two U.S. citizens in virtually any other place on the face of the planet, at any time since the Founding (and even those born in the Canal Zone before 1904 or after 1937)—is meritless. But this Court need not, and therefore must not, reach the merits of the constitutional question posed by plaintiff (even preliminarily) because, as demonstrated in Defendants' Motion to Dismiss (D.E. 27), plaintiff's constitutional claims are not justiciable, and further because the injunctive relief he seeks is unavailable under the Constitution.

## ARGUMENT

### I. Plaintiff Has Failed To Demonstrate The Existence Of A Justiciable Case Or Controversy

#### A. Plaintiff's Complaint Fails To Allege Facts Sufficient To Establish His Standing To Bring His Claims For Relief

Plaintiff does not dispute that, as the party invoking federal jurisdiction, it is his burden to "allege facts in his . . . Complaint that, if proven, would confer standing upon him." *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 761 (9th Cir. 2006); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). He contends that he has met this burden because his complaint alleges that

1

he is one of the 55 electors designated by the American Independent Party and that his status as a would-be member of the Electoral College gives him "a personal stake in the outcome of the election" which, plaintiff contends, is all that Article III requires. *See* Pl. Opp'n 4.

As an initial matter, plaintiff's *complaint* does not allege any "personal stake in the outcome of the election." The *only* threatened injury alleged in plaintiff's complaint is "the harm sustained by being forced to compete against—and potentially defeated by—an illegal and illegitimate campaign." Compl. ¶¶ 23, 31, 39, 46, 56. But as demonstrated in the motion to dismiss, plaintiff will suffer no competitive injury in the general election because he is not competing in the general election. The AIP's designated competitor in the general election is Ambassador Alan Keyes, and he is conspicuous in his absence from these proceedings.

Plaintiff argues that his "electoral vote is at stake" in the election, which gives him a "personal stake" in the election's outcome. Pl. Opp'n 7. Even if that were true, that is not the injury plaintiff alleged in his *complaint*. Indeed, plaintiff's opposition papers never once even mention—much less cite to—his *complaint*. Though plaintiff now may wish to press a theory of injury different from that stated in his complaint, this court is "powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990). "[T]he facts demonstrating standing must be clearly alleged in the complaint." *W Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

Even if this Court were permitted to look beyond the allegations of injury in plaintiff's complaint and focus on the new claims made in plaintiff's opposition to the motion to dismiss, plaintiff is incorrect that any "personal stake in the outcome of an election" gives one standing to sue to strip a candidate from the ballot. The alleged unlawful injury to the plaintiff's "personal stake" must also be likely to be redressed by the relief he requests. *See Lujan*, 504 U.S. at 560-61. Those two requirements were met in *Erum v. Cayetano*, 881 F.2d 689 (9th Cir. 1989), where the plaintiff alleged that Hawaii's restrictions on access to the State's general election ballot violated his First Amendment rights as a candidate and a voter, and his requested relief would have redressed that injury by enjoining the enforcement of those ballot-access restrictions. *Id.* at 691. Plaintiff's opposition, however, describes no injury that is *both* particularized to the plaintiff *and* likely to be

2

redressed by the relief he seeks. Instead, when he addresses the requirement of a concrete and particularized injury-in-fact, he posits one threatened injury—"plaintiff's electoral vote is at stake . . . if the AIP wins the election, plaintiff will cast one of California's fifty-five electoral votes"—and, when he addresses the requirement of redressability, another—"plaintiff faces the likelihood that he will lose his electoral vote to an ineligible candidate." Pl. Opp'n 4, 8. But Article III is not a shell game, and its irreducible constitutional requirements cannot be evaded by plaintiff's sleight-of-hand.

Plaintiff's first version of his injury—"plaintiff's electoral vote is at stake . . . if the AIP wins the election" (Pl. Opp'n 4)—can be intelligently understood only as claiming that Senator McCain's allegedly unlawful candidacy for President diminishes the likelihood that the AIP will win the general election and, accordingly, the probability that plaintiff will attain a seat in the Electoral College. That injury may be particularized to the plaintiff, but it is not likely to be redressed by the relief he seeks. *Nowhere*—not in his complaint, not in his opposition to defendants' motion to dismiss—does plaintiff ever allege that enjoining Senator McCain's candidacy or stripping Senator McCain's name from the general election ballot will make it more likely that Ambassador Keyes will win California's general election, or even that the requested relief will make it more likely that Ambassador Keyes will receive more votes than he would if Senator McCain were to remain on the ballot. As demonstrated in the motion to dismiss, there is no sound reason to believe that enjoining Senator McCain's candidacy would even marginally improve plaintiff's prospects for attaining a seat in the Electoral College, but plaintiff's failure even to *allege* as much means that there is no live case or controversy arising out of this alleged injury.

Plaintiff's second version of his injury—"his electoral voice [might be] lost to an ineligible candidate" (Pl. Opp'n 9)—arises not from the probability that the AIP will lose the State's general election, but rather from the possibility that John McCain could win. "Plaintiff is not alleging that he must be one of California's electors. He is merely alleging that Senator McCain must not be the candidate." *Id.* While this alleged injury seemingly could be redressed by an injunction terminating Senator McCain's candidacy, it is in no way particularized to plaintiff. Plaintiff's interest in ensuring that "his electoral voice is not lost to an ineligible candidate" (*id.*) is indistinguishable from that shared by every voter. It is not an interest in the efficacy of one's vote; it is an interest "in the proper

REPLY OF DEFENDANTS SENATOR JOHN McCAIN, THE REPUBLICAN NATIONAL COMMITTEE, AND THE CALIFORNIA REPUBLICAN PARTY IN SUPPORT OF THEIR MOTION TO DISMISS

application of the Constitution and laws" shared by every voter and, indeed, every citizen. *Arizonans for Official English v. Arizona*, 502 U.S. 43, 64 (1997). That type of generalized grievance does not amount to a *personal* stake in the outcome of the State's general election, and is a plainly insufficient basis for the invocation of the Article III judicial power.[1]

Insofar as plaintiff has failed to allege an injury that is both particularized and likely to be redressed by the relief he seeks, he has failed to meet his burden of pleading facts sufficient to establish his standing. His suit accordingly must be dismissed.

**B.    Plaintiff's Complaint Demands Resolution Of A Nonjusticiable Political Question**

The function of the political question doctrine is to preserve the Framers' separation of powers by "restrain[ing] the Judiciary from inappropriate interference in the business of the other branches of Government." *United States v. Munoz-Flores*, 495 U.S. 385, 394 (1990). It cannot seriously be disputed that permitting the Judiciary to determine who is eligible to serve in the coordinate branches would have grave implications for the separation of powers. And plaintiff does not dispute that the judicial branch has never before in the history of the Nation passed on such a question. Yet on plaintiff's view, it is the Judiciary—not the voters or politically accountable branches—that should be the first and only arbiter of questions concerning eligibility for the Presidency. *See* Pl. Opp'n 9-11.

Plaintiff argues that the question of Senator McCain's eligibility is justiciable because the text of the Twelfth Amendment does not clearly assign determinations of eligibility exclusively to the Electors or to Congress. *See* Pl. Opp'n 10-11. But plaintiff cannot dispute that the Constitution provides the voters, the Electoral College, and Congress each with opportunities to pass upon a candidate's eligibility to hold the Office of President. Voters can choose not to vote for a candidate they believe to be ineligible, and members of Congress can object to electoral votes as they are counted. 3 U.S.C. § 15. And plaintiff ignores completely the Twentieth Amendment, which *explicitly* provides for the scenario when "a President elect shall have failed to qualify." U.S. Const.

---

[1]    Moreover, any claim of injury contingent upon Senator McCain's winning the State's general election is unripe for judicial resolution. *See Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002); Mot. 6 n.3. Plaintiff's opposition does not dispute this. For this reason, at least, plaintiff's claim against the 55 Republican electors must be dismissed.

REPLY OF DEFENDANTS SENATOR JOHN McCAIN, THE REPUBLICAN NATIONAL COMMITTEE, AND THE CALIFORNIA REPUBLICAN PARTY IN SUPPORT OF THEIR MOTION TO DISMISS

amend. XX, § 3. The Twelfth and Twentieth Amendments' textual commitment of questions of presidential eligibility to the voters, the Electoral College, and Congress is at least as clear as the Impeachment Clause's commitment to the Senate of questions concerning the procedures necessary to constitute an impeachment trial. *See Nixon v. United States*, 506 U.S. 224, 228-36 (1993). This Court should not inject itself into this fundamentally political dispute at least until the Electoral College and the Congress have been permitted the opportunity to perform the functions accorded to them by the Constitution.

## II. Plaintiff's Opposition Confirms That His Complaint Does Not State A Claim Upon Which Relief Can Be Granted

### A. This Court Cannot Enjoin The Secretary Of State From Enforcing Valid State Laws Enacted Pursuant To The State Legislature's Plenary Authority To Select California's Presidential Electors

Plaintiff concedes—as he must—that this Court is without the equitable authority to enjoin the Secretary from carrying out her duties under concededly valid state laws. In his opposition, however, he argues that his first claim for relief is an as-applied challenge to the constitutionality of the California statute, Cal. Elec. Code § 6901, that requires Secretary Bowen to place Senator McCain's name on the State's general election ballot. To the extent the state law requires the Secretary to place an ineligible candidate on the ballot, plaintiff argues, it violates Article II as-applied.

This surely comes as news to the California Attorney General, who until plaintiff's opposition had no notice that the constitutionality of a state statute had been called into question in this litigation. And it comes as news to defendants as well because plaintiff's complaint nowhere alleges that Section 6901 is unconstitutional. New or not, plaintiff's argument is meritless, and it offers no answer to defendants' contention that the relief sought by plaintiff is barred by Article II, which grants the States plenary authority over the manner of the selection of their electors.

Plaintiff concedes that the State has plenary power to determine the manner in which it selects its electors, *see* Pl. Opp'n 12, but argues that the resulting process must conform to Article II's eligibility requirements and that, accordingly, a State may not require that an ineligible candidate be placed on a ballot that will result in the selection of the State's electors. But this argument

5

overlooks the fact that, in selecting their presidential electors, the States are not constitutionally required to hold elections at all: "The constitution does not provide that the appointment of electors shall be by popular vote, *nor that the electors shall be voted for upon a general ticket*, nor that the majority of those who exercise the elective franchise can alone choose the electors." *McPherson v. Blacker*, 146 U.S. 1, 27 (1892) (emphasis added). If the Constitution does not require that presidential electors "be voted for upon a general ticket" at all, it could not possibly micromanage the appearance of such a ballot.[2]

### B. The First Amendment Does Not Permit This Court To Enjoin Senator McCain From "Running" For President

Plaintiff's opposition underscores the extreme nature of the relief he seeks. He not only seeks to keep Senator McCain from appearing on the ballot, but also from even "express[ing] that he is qualified to be President." Pl. Opp'n 16. In other words, plaintiff seeks nothing less than for this Court to muzzle one of his political opponents from engaging in core political speech that is entitled to maximum protection under the First Amendment. *See, e.g., Buckley v. Valeo*, 424 U.S. 1, 14 (1976). Such relief is unprecedented and repugnant to Senator McCain's fundamental right to freedom of speech. Additionally, as his party's standard bearer, an injunction against Senator McCain from running for President would also impermissibly impinge on the First Amendment rights of the Republican Party.

Although Plaintiff concedes that "there are First Amendment interests implicated by running for political office," he goes on to assert that such interests "must yield to valid eligibility

---

[2] Plaintiff casts defendants as arguing that "the federal judiciary cannot, under any circumstances, intervene in the state process of choosing its presidential electors." Pl. Opp'n 13. Of course, that is not the case, nor is it defendants' argument. When a State chooses to select its electors through popular election, as all States currently do, federal laws enacted subsequent to Article II, including the First and Fourteenth Amendments, sharply limit the State's ability to limit candidates' access to the ballot and to restrict or dilute the franchise. *See, e.g., Anderson v. Celebrezze*, 460 U.S. 780, 792 (1983) (invalidating on First Amendment grounds state restrictions on access to the general election ballot). And in *Bush v. Gore*, seven Justices agreed that, in the absence of clear and uniformly-applied standards for reading punch-card ballots, a court-ordered recount violated the "one person, one vote" principle rooted in the Equal Protection Clause. 531 U.S. 98, 107-11 (2000) (per curiam). But here, Plaintiff relies not on Amendments to the Constitution, but on Article II itself, and does so not to expand candidate access to their general election ballots, but to *restrict* it. His invocation of *Bush v. Gore* is most inapt.

REPLY OF DEFENDANTS SENATOR JOHN McCAIN, THE REPUBLICAN NATIONAL COMMITTEE, AND THE CALIFORNIA REPUBLICAN PARTY IN SUPPORT OF THEIR MOTION TO DISMISS

requirements." Pl. Opp'n 14. But to support his unfounded request to enjoin Senator McCain from "running" for President, plaintiff relies exclusively on ballot access cases that are plainly inapposite. For instance, plaintiff asserts that *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997), stands for the proposition that "there is no associational right to run an ineligible candidate." Pl. Opp'n 14. But plaintiff badly misreads that decision. *Timmons* held only that Minnesota's ban on fusion tickets—a party nominating as its candidate the nominee of another party—did not violate the First Amendment, and thus that the New Party did not have a constitutional right to *place on the ballot* the name of a candidate who was already the nominee of another party. *See* 520 U.S. at 359. To the extent that *Timmons* said anything at all about the right of an ineligible candidate to campaign for office, it endorsed it. *Timmons* contemplated that a party might choose to nominate a candidate that is "ineligible for office," and acknowledged that the party's right to do so was absolutely protected. *Id.* It was only against that background that the *Timmons* Court drew a distinction between the First Amendment associational activities of a candidate campaigning for a position and a political party nominating the standard-bearer of its choice on the one hand, and the right to access a State's ballot on the other. *See id.* ("a party . . . has the right to select the Party's 'standard bearer.' It does not follow, though, that a party is absolutely entitled to have its nominee appear on the ballot"). Nothing in *Timmons* or any other decision cited by plaintiff even remotely supports the notion that the government may prohibit a person from communicating with voters in the context of a campaign for public office. What remains of plaintiff's second claim for relief must be dismissed.[3]

---

[3]  *Brown v. Hartlage*, 456 U.S. 45 (1982), and *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), certainly do not stand for the proposition, as plaintiff suggests (at 16), that Senator McCain's political speech, because it is purportedly false, is subject to "minimal" protection. *Brown* unanimously *invalidated* on First Amendment grounds a state law that voided a candidate's victory if he erroneously claimed he would serve at a reduced salary when it was fixed by law. 456 U.S. at 62. Quoting *Gertz*, the Court held that "we depend for . . . correction not on the conscience of judges and juries but on the competition of other ideas" and further observed that "in political campaigns . . . [t]he preferred First Amendment remedy of more speech, not enforced silence, . . . has special force." 456 U.S. at 61.

### C. Plaintiff's Claim To Enjoin California's Republican Presidential Elector Candidates From Voting For Senator McCain, If They Become Electors, Is Barred By The Twelfth Amendment

Plaintiff also fails to rebut the plain language of the Twelfth Amendment that prohibits this Court from dictating who presidential electors can and cannot vote for in the Electoral College. Rather than address the constitutional obstacle to the relief he seeks, plaintiff argues that his claim for an injunction against California's Republican presidential elector candidates does not present a nonjusticiable political question. Pl. Opp'n 17. He seeks to reframe the question as a debate over "who has the constitutional authority to resolve disputes regarding presidential candidates' eligibility." *Id.* at 18. But this Court can reach defendants' Rule 12(b)(6) motion only if *that* debate already has been resolved in plaintiff's favor, with the Court rejecting defendants' Rule 12(b)(1) defenses and concluding that a court may appropriately resolve pre-election disputes over presidential candidates' eligibility. For plaintiff to assert that this Court has jurisdiction over his claim is no answer to the defense that his requested relief cannot be granted. Here, the Twelfth Amendment and the role within our constitutional structure that it confers on the Electoral College bars plaintiff's request to enjoin California's Republican presidential electors from voting for Senator McCain. Plaintiff complains that the "only authority the Republicans cite for their position, other than the Twelfth Amendment, is Federalist Number 68," asserting that the views of the Framers are "not the appropriate authority to frame the issue." Pl. Opp'n at 17. But no less of an authority than Chief Justice Marshall observed that "[t]he opinion of the *Federalist* has always been considered as of great authority," *Cohen v. Virginia*, 19 U.S. 264, 418 (1821), and the Court since has held that it is "entitled to weight in any discussion as to the true intent and meaning of the provisions of our fundamental law." *Wheeling, P. & C. Transp. Co. v. City of Wheeling*, 99 U.S. 273, 280 (1878). In support of his contention, plaintiff offers nothing. His claim against the Republican Electors should be dismissed.

### D. Plaintiff's Claim For Declaratory Relief Must Be Dismissed Because, Without His Claims For Injunctive Relief, It Would Not Lead To Specific, Concrete Relief

Finally, because plaintiff's claims for injunctive relief must be dismissed, his remaining cause of action for declaratory relief must also fail because, in itself, it seeks nothing more than an

8

REPLY OF DEFENDANTS SENATOR JOHN McCAIN, THE REPUBLICAN NATIONAL COMMITTEE, AND THE CALIFORNIA REPUBLICAN PARTY IN SUPPORT OF THEIR MOTION TO DISMISS

1     advisory opinion.  In response, plaintiff only presents a tautology:  Because his complaint for

2     injunctive relief should not be dismissed, he has Article III standing to seek a declaratory judgment.

3     Pl. Opp'n at 20 ("[P]laintiff has standing . . . to present his claims for declaratory relief by the same

4     token that he has standing to present his injunctive claims.").  The only potential relief plaintiff

5     references is the injunctive relief sought by his complaint.  *See id.*  Plaintiff has no answer to the

6     question of what "specific relief through a decree of conclusive character" plaintiff would obtain

7     through a declaratory judgment if this Court determines (as it should) that he is not entitled to

8     injunctive relief.  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937).  Lacking that

9     answer, plaintiff has no standing to seek a declaratory judgment in the absence of a cognizable claim

10    for injunctive relief.

11    **III.  Plaintiff's Request For Leave To Amend His Complaint Should Be Denied**

12          Having put defendants and the Court through the paces of expedited briefing on both a motion

13    to dismiss and his motion for a preliminary injunction, plaintiff finds the temerity to request leave to

14    amend his complaint to add the AIP as a plaintiff to this litigation to save the case from dismissal for

15    lack of standing.  As defendants have filed a responsive pleading, plaintiff is no longer entitled to

16    amend his complaint as of right; he can do so only by leave of court.  Defendants object.  If the Court

17    is inclined to consider plaintiff's request, defendants respectfully request that the Court require

18    plaintiff to file a motion for leave and that the motion for leave be briefed in the ordinary course.  In

19    any event, plaintiff's untimely request should be denied.  Plaintiff has known since *at least* July 5,

20    2008, that he would be designated as an AIP presidential elector.  *See King v. Bowen*, No. 34-2008-

21    80000016, Decl. of Mark Seidenberg, at Ex. C (Cal. Super. Ct. Aug. 8, 2008) (attached hereto as

22    Exhibit A).  Whatever plaintiff's excuse for waiting until mid-August to launch his suit, the AIP has

23    none.  The AIP could have brought suit perhaps as early as March, when Senator McCain became the

24    presumptive nominee of the Republican Party.  The AIP and its new leader should not at this very

25    late date be permitted to begin this litigation afresh.  "[U]ndue delay . . . or dilatory motive on the

26    part of the movant" is a sufficient basis for denying its request for leave to amend.  *Foman v. Davis*,

27    371 U.S. 178, 182 (1962).

28

REPLY OF DEFENDANTS SENATOR JOHN McCAIN, THE REPUBLICAN NATIONAL COMMITTEE, AND THE
CALIFORNIA REPUBLICAN PARTY IN SUPPORT OF THEIR MOTION TO DISMISS

# CONCLUSION

For these reasons and those stated in their opening brief, Defendants' Motion to Dismiss Plaintiff's Complaint should be granted.

Respectfully submitted,

DATED: September 8, 2008

By:_____/s/*Joshua D. Hess*_____
                              Joshua D. Hess

Theodore B. Olson, SBN 38137
Matthew D. McGill, *pro hac vice*
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 887-3680

*Attorneys for Defendants*
SENATOR JOHN MCCAIN AND THE
REPUBLICAN NATIONAL COMMITTEE

BELL, McANDREWS & HILTACHK, LLP

By:_____/s/*Charles H. Bell, Jr.*_____
                              Charles H. Bell, Jr.

*Attorney for Defendant*
CALIFORNIA REPUBLICAN PARTY

## ATTESTATION OF PERMISSION TO ELECTRONICALLY SIGN FOR OTHER PARTIES

I, Joshua D. Hess, am the ECF User whose identification and password are being used to file this document, Defendants' Reply In Support of Their Motion To Dismiss Plaintiff's Complaint. I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories, and that each of the signatories has provided me with written permission to sign their names to this document.

_____/s/*Joshua D. Hess*_____
                              Joshua D. Hess

REPLY OF DEFENDANTS SENATOR JOHN McCAIN, THE REPUBLICAN NATIONAL COMMITTEE, AND THE CALIFORNIA REPUBLICAN PARTY IN SUPPORT OF THEIR MOTION TO DISMISS

# EXHIBIT A

LAW OFFICE OF GARY G. KREEP
GARY G. KREEP (SBN 066482)
932 "D" Street, Suite 2
Ramona, California 92065
(760) 787-9907

Attorney for Real Party In Interest
EDWARD NOONAN

```
┌─────────────────────────┐
│        FILED            │
│                         │
│      AUG - 8 2008       │
│      B. Frates          │
│   By _____   │
│        Deputy Clerk     │
└─────────────────────────┘
```

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SACRAMENTO

| | |
|---|---|
| JAMES KING, as the Chairman of the American Independent Party, and as an elector residing in the State of California, <br><br> Petitioner, <br><br> v. <br><br> DEBRA BOWEN, California Secretary of State, in her official capacity, <br><br> Respondent. <br> _____ <br> GEOFF BRANDT, State Printer, Department of State Publishing, in his official capacity, <br><br> Real Party In Interest, <br><br> EDWARD NOONAN, <br><br> Real Party In Interest. | Case No.  2008 8000 0016 <br><br> **DECLARATION OF MARK SEIDENBERG IN OPPOSITION TO PETITION FOR WRIT OF MANDATE** <br><br><br><br><br><br> Date: <br> Time: <br> Dept:  **31** <br> Jge:  Hon. <br><br> Petition Filed:  8/4/08 <br> Trial Date:  None Set |

I, MARK SEIDENBERG, hereby declare as follows:

1.      That I am a resident of the State of California, that I am the California State Vice Chairman of the American Independent Party, having been elected to this post on September 3, 2006, that my term of office does not expire until on or about September 3, 2008, and that, if called upon to do so, I could, and would, competently testify as follows:

1

**DECLARATION OF MARK SEIDENBERG**

**EXHIBIT A**

2.    That I believe that I am an indispensable party in these proceedings, given the fact that Petitioner has declared that they have replaced all of the current officers of the American Independent Party in the State of California by elections held on or about June 28-29, 2008, in Los Angeles County, California;

3.    That it appears that the PETITION, directly or indirectly, asks the Court to confirm that election, although said purported election was not held in conformity with the California Elections Code, as more fully discussed in the OPPOSITION TO PETITION FOR WRIT OF MANDATE, filed herewith;

4.    That ANN THOMAS, in her declaration, claims that there are only 16 elected officers of the American Independent Party in the State of California, whereas they are, in reality, 21, and that attached hereto and made a part hereof, marked "EXHIBIT A" is a list of said officers;

5.    That ANN THOMAS and JAMES KING seem to be basing their false claims of a state convention and a state central committee meeting of the American Independent Party on June 28-29, 2008, in Los Angeles County, on a claim that 9 officers, which they claim constitute a majority of the officers of the party, called for it, however, as the Court can ascertain, nine is not a majority of 21, and, if so, their claims are false in this regard;

6.    That the California Election Code requires that the State Central Committee meeting and the State Convention of the American Independent Party be held in Sacramento, California, and, that, as a result, the meetings held in Los Angeles County are null and void;

7.    That it is true that I went to the hotel where the June 28, 2008, meeting was held, that I did not attend the meeting, as I did not want to lend it an air of legitimacy, that Ann Thomas did invite me to come in, and that, when I declined, she ordered me to leave the hotel;

8.    That I am unaware of any authority for Ann Thomas to be the Chairman of the State Central Committee meeting or the State Convention, as her only powers and duties, are delineated in Article VII of our Bylaws, a copy of which is attached hereto and made a part hereof, marked "EXHIBIT B", are "The Secretary shall keep minutes of all meetings of the State Central Committee";

9.    That I am aware that the California Election Code provides for a two-year term of office, as does our Bylaws, for the office of State Chairman of the American Independent Party, and that I know

2

1  of no authority for the "rump" group to unilaterally abrogate that two-year term, as they are claiming to
2  have done, and as they are seeking this Court's approval to do;

3      10.  That, although not directly, indirectly, the Petitioner is seeking to remove the Electors
4  pledged to the election of Allen Keys as President of the United States, and replace them with their own
5  set of Electors, pledged to the election of Chuck Baldwin as President of the United States, and that, as
6  a result, it appears that each of these Electors, if they are not made parties to this cast, will have their
7  constitutional right to case their electoral ballot for the candidate of their choice abrogated without a
8  chance to respond to this Writ;

9      11.  That attached hereto and made a part hereof, marked as "EXHIBIT C is a list of the
10  American Independent Party's Presidential Electors that has been submitted to the California Secretary
11  of State;

12      12.  That California law provides for compensation for Electors attending the Electoral
13  College subsequent to the Presidential Election, and that, as a result, there would be financial detriment
14  to those Electors were they replaced, in addition to the abrogation of their constitutional rights as
15  discussed above;

16      13.  That Allan Keys and Wiley Drake, as the Presidential and Vice-Presidential candidates
17  of the American Independent Party, would also have their rights abrogated by their unilateral
18  replacement by this Court, which Petitioner is directly seeking to have done, unless they are allowed the
19  opportunity to respond to these proceedings, as they would both thereupon be denied a place on the 2008
20  Presidential Ballot, which would be a substantial detriment to them, as the designated candidates of the
21  American Independent Party.

22      I declare under penalty of perjury under the laws of the State of California that the foregoing is
23  true and correct. Executed this 7th day of August, 2008, at Ramona, California.

24

25                          _Mark Seidenberg_
26                          MARK SEIDENBERG

27

28

                              3

**EXHIBIT A**

## LIST OF OFFICERS ON JUNE 27, 2008

| | | | |
|---|---|---|---|
| 1. | Chairman | EDWARD C. NOONAN | |
| 2. | Vice Chairman | MARK J. SEIDENBERG | |
| 3. | National Committee and/or Slot for Chairman | EDWARD C. NOONAN | |
| 4. | National Committee | EDWARD C. NOONAN | |
| 5. | National Committee | MARK J. SEIDENBERG | |
| 6. | National Committee | CHARLES DEAMER | |
| 7. | National Committee | JAMES KING | |
| 8. | National Committee | MORTON SHORT | |
| 9. | National Committee | ELLIOTT S. GRAHAM | |
| 10. | National Committee | LARRY BELIZ | |
| 11. | National Committee | DON GRUNDMANN | |
| 12. | National Committee | AL HUEY | |
| 13. | National Committee | GRACE HILL | |
| 14. | National Committee | GERALD J. HILL | |
| 15. | National Committee | PATRICK COLGLAZIER | |
| 16. | Bylaw Officers | ANN THOMAS | - Secretary |
| 17. | Bylaw Officers | CHARLES DEAMER | - Treasurer |
| 18. | Bylaw Officers | E. JUSTIN NOONON | - Sergeant at Arms |
| 19. | Bylaw Officers | WARREN CAMPBELL | - Chaplin |
| 20. | Bylaw Officers | TABATHA SAAVEDRA | - Organizational Liaison |
| 21. | Bylaw Officers | MARKHAM ROBINSON | - Parliamentarian |

**EXHIBIT B**

# BYLAWS OF THE AMERICAN INDEPENDENT PARTY ADOPTED IN THE JUNE 27, 2008 MEETING OF THE STATE CENTRAL COMMITTEE
## Chaired by Edward C. Noonan from his Headquarters in Marysville California

### ARTICLE I: NAME
The name of this committee shall be the State Central Committee of the American Independent Party.

### ARTICLE II: OFFICE
The principal office of the State Central Committee shall be in the County designated by the State Chairman of the American Independent Party.

### ARTICLE III: MEMBERSHIP
The members of the State Central Committee shall be those persons specified in Sections 7600, 7601, 7603, 7604, 7605, 7612, 7613, and 7614 of the Elections Code.

### ARTICLE IV: MEETINGS
Meetings of the State Central Committee shall be the organizational meeting as provided in Section 7620 of the Elections Code, and such other meetings as may be called by the State Chairman, or by a petition signed by a majority of the party's elected officers including National Committee members, or by a petition signed by a majority of the State Central Committee.

### ARTICLE V: QUORUM
A quorum of the State Central Committee shall be a majority of the membership as provided in Section 7644 of the Elections Code. members may attend meetings either in person or by proxy.

### ARTICLE VI: OFFICERS
The officers of the State Central Committee shall be:

State Chairman

State Vice Chairman

Secretary

Treasurer

Parliamentarian

Sergeant at Arms

Chaplain

Organizational Liaison

Thirteen members of the National Committee, one of whom shall be the State Chairman of the American Independent Party.

FILED
In the office of the Secretary of State
of the State of California

JUN 2 7 2008

Debra Bowen, Secretary of State
By
Deputy Secretary of State

### ARTICLE VII:
The State Chairman shall preside at all meetings of the State Central Committee, and shall serve as the Chief Administrative Officer of the party.

The State Vice Chairman shall preside at all meetings in the absence of the Chairman and shall perform the duties of the Chairman in his/her absence

The Secretary shall keep minutes of all meetings of the State Central Committee.

The Treasurer shall account for all of the funds received and expended by the party.

The Parliamentarian shall provide guidance to the Chairman with regard to the rules of parliamentary law

The Sergeant At Arms shall keep order at State Central Committee meetings.

The Chaplain shall lead invocations at the State Central Committee meetings.

Exhibit D

The Organizational Liaison shall assist the Chairman in the organization of the American Independent Party throughout California.

The National Committee members, or alternates designated by the State Chairman or by action of the State Central Committee, shall be the official representatives of the party to the National Committee recognized by the American Independent Party.

The State Chairman may appoint area directors, chairmen of committees of the State Central Committee, and /or other non-elected officers to perform functions on behalf of the State Central Committee. Appointed officials shall serve at the pleasure of the chairman.

The State Central Committee shall exercise all powers and duties permitted to it by the Elections Code.

## ARTICLE VII: NATIONAL AFFILIATION

The national affiliation of the American Independent Party shall be determined by resolution adopted pursuant to the provisions of Section 7639 of the Elections Code.

## ARTICLE IX: USE OF NAME AND SYMBOL

All or any use of the name "American Independent Party," shall be approved by the State Central Committee, or, in the absence of formal action by the Committee, by specific written authorization of the State Chairman. In the absence of such authorization, persons displaying websites or conducting internet chat groups and/or discussion forums have no authorization to represent either expressly or by inference, that they are acting in the name of, or on behalf of the American Independent Party. The Chairman of the State Central Committee is authorized to take all steps necessary to eliminate unauthorized use of the party name.

The symbol of this party shall be the American Eagle.

## ARTICLE X: DUES

Dues for the State Central Committee shall be $24.00 per year, pursuant to Section 7642 of the Elections Code. No member of this committee who is in arrears on his or her dues shall be removed without being given thirty days warning in writing by the Chairman of this committee to give the member time to pay his or her dues. If the thirtieth day falls on a holiday or weekend, the member has until the following business day at 5:00 PM to pay. Only after the member fails to pay his or her dues in response to the warning of the Chairman may the committee remove the member for non-payment of dues.

## ARTICLE XI: STATE LAWS

Any provisions in these Bylaws contrary to any law or regulation of this State governing the activities of political parties or of this party in particular shall be deemed superseded by any such law or regulation. Moreover, this committee shall abide by the laws and regulations of this State pertaining particularly to it. However anything not explicitly forbidden to this committee by aforesaid laws and regulations may be provided for in these Bylaws.

## ARTICLE XII: AMENDMENTS

Amendments to these Bylaws may be adopted by a majority vote at any meeting of the State Central Committee.

## ARTICLE XIII: CONVENTION PROXIES

Delegates to the biennial Convention may attend meetings either in person or by proxy

Edward C. Noonan
State Party Chair

FILED
In the office of the Secretary of State
of the State of California

JUN 2 7 2008

Debra Bowen, Secretary of State
By _____
Deputy Secretary of State

**EXHIBIT C**

## LIST OF AIP PRESIDENTIAL ELECTORS

The American Independent Party in convention assembled in Sacramento, California, on July 5, 2008 adopted the following endorsement of candidates and electors:

Electors pledge to:

President of the United States:
ALAN KEYES

Vice-President of the United States:
WILEY S. DRAKE, SR.

Presidential Electors:

1.   Mark J. Seidenberg
     23405 Via San Miguel
     Alisa Viejo, CA 92656

2.   Trees A. Wowor
     23405 Via San Miguel
     Alisa Viejo, CA 92656

3.   Lawrence G. Beliz
     115 - 6th St., Condo 103
     Ramona, CA 92065

4.   Wiley Drake
     6671 Longfellow Drive
     Buena Park, CA 90620

5.   Markham Robinson
     476 Deodara St.
     Vacaville, CA 95688

6.   Mary Robinson
     476 Deodara St.
     Vacaville, CA 95688

7.   Scott Thomas
     394 ½ N. 5th St.
     Blyth, CA 92225

8.   Steven Kirk Ballenger
     4624 Ellis Ct.
     Antioch, CA 94531

9.   Gaudencio Gene Lopez
     1120 Weeks St.
     East Palo Alto, CA 94303

10.  Edward Krigbaum
     2413 Hilo Lane
     Ceres, CA 95307

11.  Marc Nettleton
     2028 Marlene Ct.
     Redding, CA 96002

12.  Edward C. Noonan
     1606 Gold St.
     Marysville, CA 95901

13.  E. Justin Noonan
     5934 Lowe Ave. #11
     Marysville, CA 95901

14.  Ashley Noonan
     6057 Griffith Ave., Space 10
     Marysville, CA 95901

15. Patricia Noonan
    1606 Gold St.
    Marysville, CA 95901

16. Michael Sullivan
    1824 Hammonton-Smartville, Rd. C
    Marysville, CA 95901

17. Nathan Sorenson
    1405 Yuba Street, Apt. #9
    Marysville, CA 95901

18. Margaret Mickelson
    1437 Lisa Way
    Marysville, CA 95901

19. Frank Mickelson
    1437 Lisa Way
    Marysville, CA 95901

20. Ray Anthony Poole
    17 Darlington Dr.
    Irvine, CA 92620

21. Margery May Tufenkjian
    18764 Philbrook St.
    Rowland Heights, CA 91748

22. Deborah Macomber
    310 Woodhill Dr.
    Redding, CA 96003

23. Patrick Colglazier
    40117 Davis St.
    Fremont, CA 94538

24. John Daniel Robertson
    5020 Haven Pl. #306
    Dublin, CA 94568

25. Gerald Hill
    9702 DeRee Road
    Live Oak, CA 95953

26. Grace Hill
    9702 DeRee Road
    Live Oak, CA 95953

27. Nita D. Schwartz
    3363 L St.
    Eureka, CA 95503

28. Mary Stephens
    1160 Burton Dr. B
    Redding, CA 96003

29. Brett Fowler
    53 La Jolla St.
    Watsonville, CA 95076

30. Ken Peterson
    6928 Danyeur Road
    Redding, CA 96001

31. Rick Nettleton
    2630 Portola Drive #30
    Santa Cruz, CA 95062

32. Julie Nettleton
    311 Old McCloud Rd. Unit M
    Mount Shasta, CA 96067

33. David McFadden
    31516 Windsong Dr.
    San Juan Capistrano, CA 92675

34. Jeff F. Allan
    13601 W. Hobsonway
    Blythe, CA 92225

35. Jere Brett Allan
    13601 W. Hobsonway
    Blythe, CA 92225

36. Michael L. Paterson
    4 Fallbrook
    Irvine, CA 92604

37. Johnnie E. Hodge, III
    220 S. Paulsen Ave.
    Compton, CA 90220

38. Robert Abbey
    222 Lema Dr.
    Nipomo, CA 93444

39. Stephanie Tufenkjian
    18764 Philbrook St.
    Rowland Heights, CA 91748

40. Richard Tufenkjian
    18764 Philbrook St.
    Rowland Heights, CA 91748

41. Timothy Tufenkjian
    18764 Philbrook St.
    Rowland Heights, CA 91748

42. Karen Travenia
    491 Cottonwood St.
    Vacaville, CA 95688

43. Joshua James Herring
    82 Red Cedar Way
    Chester, CA 95842

44. Brandon David Coon
    7581 Amador Valley Blvd. #30
    Pleasanton, CA 94568

45. John Furniss
    3041 Seminole Drive
    Redding, CA 96001

46. Julie Furniss
    3041 Seminole Drive
    Redding, CA 96001

47. Louis Michael Banner
    9031 Colbreggan Dr.
    Huntington Beach, CA 92646

48. Mary Banner
    9031 Colbreggan Dr.
    Huntington Beach, CA 92646

49. Joseph P. Banner
    9031 Colbreggan Dr.
    Huntington Beach, CA 92646

50. Martha Jane Tufenkjian
    18764 Philbrook St.
    Rowland Heights, CA 91748

51. Jeff Grage
    8307 Katherine St.
    Simi Valley, CA 93063

52. David Spencer
    7622 Westover Ct.
    Fair Oaks, CA 95628

53. Ernest Vance
    3501 Bradshaw Rd. #113
    Sacramento, CA 95827

54. Clark Ambassador for Christ
    2260 El Cajon Blvd. #433
    San Diego, CA 92104

55. Phelps Hobart
    939 - 44th Street
    Sacramento, CA