IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARKHAM ROBINSON, in his capacity as Presidential Elector and Chairperson-Elect of the American Independent Party,

    Plaintiff,

  v.

SECRETARY OF STATE DEBRA BOWEN, in her individual and official capacities, THE REPUBLIC NATIONAL COMMITTEE, an organization form unknown, THE REPUBLICAN PARTY OF CALIFORNIA, an organization, form unknown, SENATOR JOHN McCAIN, in his individual and official capacities, DOES ONE through FIVE, inclusive,

    Defendants.

No. C 08-03836 WHA

**ORDER DENYING PRELIMINARY INJUNCTION AND DISMISSING ACTION**

    Senator John McCain, this action alleges, is not a "natural-born citizen" within the meaning of Article II of the Constitution of the United States and is therefore ineligible to serve as president. Senator McCain was born in the Panama Canal Zone in 1936. His parents were both United States citizens. Plaintiff will appear on the November ballot as an elector pledged to Alan Keyes, a third-party candidate, and seeks to defeat Senator McCain through litigation rather than via the democratic process, moving for an order to remove Senator McCain from the California ballot in November.

    Article II states that "No Person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of

1  President." Article II left to Congress the role of defining citizenship, including citizenship by
2  reason of birth. *Rogers v. Bellei*, 401 U.S. 815, 828 (1970). Many decades later, the Fourteenth
3  Amendment set a floor on citizenship, overruled the *Dred Scott* decision, and provided that all
4  born or naturalized in the United States, and subject to the jurisdiction thereof, were citizens.
5  Nonetheless, subject to the floor of the Fourteenth Amendment, it has always been left to
6  Congress to define who may be a citizen by reason of birth (or naturalization proceedings, for
7  that matter). *Id*. at 829–30.

8  At the time of Senator McCain's birth, the pertinent citizenship provision prescribed that
9  "[a]ny child hereafter born out of the limits and jurisdiction of the United States, whose father
10 or mother or both at the time of the birth of such child is a citizen of the United States, is
11 declared to be a citizen of the United States." Act of May 24, 1934, Pub. L. No. 73-250, 48
12 Stat. 797. The Supreme Court has interpreted the phrase "out of the limits and jurisdiction of
13 the United States" in this statute to be the converse of the phrase "in the United States, and
14 subject to the jurisdiction thereof," in the Fourteenth Amendment, and therefore to encompass
15 all those not granted citizenship directly by the Fourteenth Amendment.[1] Under this view,
16 Senator McCain was a citizen at birth. In 1937, to remove any doubt as to persons in Senator
17 McCain's circumstances in the Canal Zone, Congress enacted 8 U.S.C. 1403(a), which declared
18 that persons in Senator McCain's circumstances are citizens by virtue of their birth, thereby
19 retroactively rendering Senator McCain a natural born citizen, if he was not one already. This
20 order finds it highly probable, for the purposes of this motion for provisional relief, that Senator
21 McCain is a natural born citizen. Plaintiff has not demonstrated the likelihood of success on the
22 merits necessary to warrant the drastic remedy he seeks.

23                    *          *          *

24 Turning to the viability of the case at large, plaintiff has no standing to challenge
25 Senator McCain's qualifications. Plaintiff is a mere candidate hoping to become a California

---

[1] *United States v. Wong Kim Ark*, 169 U.S. 649, 687 (1898) ("The words 'in the United States, and subject to the jurisdiction thereof,' in the first sentence of the fourteenth amendment of the constitution, must be presumed to have been understood and intended by the Congress which proposed the amendment . . . [as] the converse of the words 'out of the limits and jurisdiction of the United States,' as habitually used in the naturalization acts.")

2

elector pledged to an obscure third-party candidate whose presidential prospects are theoretical at best. Plaintiff has, therefore, no greater stake in the matter than a taxpayer or voter. *Hollander v. McCain*, 2008 WL 2853250 (D.N.H. 2008). Neither plaintiff nor general election voters favoring the same candidate as plaintiff have in any way been prevented from supporting their preferred candidate. If plaintiff alleges that his prospects of becoming an elector would be enhanced absent Senator McCain's candidacy, any such claim would be wholly speculative. Moreover, plaintiff himself is not a candidate in competition with John McCain — the harm plaintiff alleges is not only speculative but also merely derivative of the prospects of his favored obscure candidate. *Gottlieb v. Federal Election Commission*, 143 F.3d 618, 622 (D.C. Cir. 1998). His claimed injury is neither particularized nor actual and imminent. Plaintiff lacks standing to bring this lawsuit.

*       *       *

Article II prescribes that each state shall appoint, in the manner directed by the state's legislature, the number of presidential electors to which it is constitutionally entitled. The Twelfth Amendment prescribes the manner in which the electors appointed by the states shall in turn elect the president:

> "[t]he electors shall meet in their respective states and vote by ballot for President and Vice-President . . . and they shall . . . transmit [their votes] sealed to the seat of the government of the United States, directed to the President of the Senate; — The President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted."

Federal legislation further details the process for counting electoral votes in Congress. 3 U.S.C. 15. Section 15 directs that Congress shall be in session on the appropriate day to count the electoral votes, with the President of the Senate presiding. It directs that designated individuals shall open, count and record the electoral votes, and then present the results to the President of the Senate, who shall then "announce the state of the vote." *Ibid*. The statute provides a mechanism for objections then to be registered and resolved:

> "[e]very objection shall be made in writing, and shall state clearly and concisely, and without argument, the ground thereof, and shall be signed by at least one Senator and one Member of the House of Representatives before the same shall be received. When all

> objections so made . . . shall have been received and read, the Senate shall thereupon withdraw, and such objections shall be submitted to the Senate for its decision; and the Speaker of the House of Representatives shall, in like manner, submit such objections to the House of Representatives for its decision."

*Ibid*. The Twentieth Amendment further provides,

> "if the President elect shall have failed to qualify, then the Vice President elect shall act as President until a President shall have qualified; and the Congress may by law provide for the case wherein neither a President elect nor a Vice President elect shall have qualified, declaring who shall then act as President, or the manner in which one who is to act shall be elected, and such person shall act accordingly until a President or Vice President shall have qualified."

It is clear that mechanisms exist under the Twelfth Amendment and 3 U.S.C. 15 for any challenge to any candidate to be ventilated when electoral votes are counted, and that the Twentieth Amendment provides guidance regarding how to proceed if a president elect shall have failed to qualify. Issues regarding qualifications for president are quintessentially suited to the foregoing process. Arguments concerning qualifications or lack thereof can be laid before the voting public before the election and, once the election is over, can be raised as objections as the electoral votes are counted in Congress. The members of the Senate and the House of Representatives are well qualified to adjudicate any objections to ballots for allegedly unqualified candidates. Therefore, this order holds that the challenge presented by plaintiff is committed under the Constitution to the electors and the legislative branch, at least in the first instance. Judicial review — if any — should occur only after the electoral and Congressional processes have run their course. *Texas v. United States*, 523 U.S. 296, 300–02 (1998). This circumstance also obviates any occasion to consider plaintiff's standing-cure suggestion that the American Independent Party (affiliated with Alan Keyes) be allowed to intervene.

4

\* \* \*

For the foregoing reasons, plaintiff's motion for preliminary injunction is **DENIED** and the motion to dismiss this case in its entirety is **GRANTED**. Leave to amend is **DENIED** and the Clerk shall **CLOSE** the file.

**IT IS SO ORDERED.**

Dated: September 16, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE